STATE OF DELAWARE UPON THE RELATION OF RADIO CORPORATION OF AMERICA *vs.* ALDEN R. BENSON, SECRETARY OF STATE OF THE STATE OF DELAWARE.

1. CORPORATIONS—SECRETARY OF STATE MUST FILE CORPORATE AMENDMENT, IF OBJECT SOUGHT CAN BE LEGALLY ACCOMPLISHED THEREBY.

   Secretary of State must accept and file corporate amendment, if object sought can be legally accomplished thereby, even if he thinks corporation may do something thereunder which can only be accomplished under different section of law.

2. CORPORATIONS—STATUTE HELD TO AUTHORIZE DECREASE IN NUMBER OF SHARES OF NO PAR STOCK ISSUED.

   *General Incorporation Law*, § 26, *held* to authorize decrease in number of shares of no par stock issued, as shares represent same aliquot or proportionate parts of capital, though number be decreased.

3. EVIDENCE—COURT PRESUMED REDUCTION OF STOCK UNDER AMENDMENT WOULD BE DONE LEGALLY.

   Where corporation could reduce no par stock under *General Incorporation Law*, § 26, presumption is it would be done legally so as to change only number of shares, and not capital, which could only be accomplished under *Section* 28.

4. CORPORATIONS—PURPOSE OF STATUTES PROVIDING FOR REDUCTION OF CAPITAL STOCK DEFINED.

   Purpose of *General Incorporation Law*, § 26, is to provide convenient method for corporation to reduce capital stock where no diminution of capital is intended, whereas *Section* 28, requiring payment of all debts before capital stock may be reduced thereunder, is for creditors' benefit to protect against decrease of capital, which is creditors' security.

5. CORPORATIONS—WHICH OF TWO SECTIONS TO FOLLOW, IN REDUCING CORPORATE STOCK, DEPENDS ON PURPOSE OF REDUCTION.

   In amending corporate charter to reduce capital stock, choice of proceeding under *General Incorporation Law*, § 26, or under *Section* 28, *held* to depend, not on character of stock decreased, but on intended effect of reduction, former section being applicable only where there is no intent to reduce capital stock so as to impair creditors' security.

6. CORPORATIONS—SECRETARY OF STATE REQUIRED TO ACCEPT AND FILE PROPOSED AMENDMENT REDUCING CAPITAL STOCK.

   Where proposed amendment to corporate charter, reducing 7,500,000 shares of common stock without nominal or par value, of which 5,711,302

had been issued, to 1,500,000 shares of same character, was proffered, under *General Incorporation Law*, § 26, Secretary of State *held* required to accept and file it, since such reduction could be legally accomplished under that section without impairing capital.

(*June* 17, 1924.)

PENNEWILL, C. J., RICE and RODNEY, J. J., sitting.

*Andrew C. Gray* and *H. H. .Ward, Sr.* (of Ward, Gray and Neary), *Daniel O. Hastings* and *Maynard David* (of the New York Bar), admitted Pro Hac Vice, for petitioner.

*Clarence A. Southerland* and *Sylvester D. Townsend, Jr.*, for respondent.

Superior Court for New Castle County, May Term, 1924. *Mandamus*, No. 142, May Term, 1924.

PENNEWILL, C. J., delivering the opinion of the Court:

The plaintiff filed in this Court a petition praying for the issuance of a peremptory writ of *mandumus* to the defendant directed, commanding him to forthwith file in the office of the Secretary of State a certain certificate evidencing and embodying a proposed amendment to its Certificate of Incorporation.

The defendant refused to accept and file said certificate because the proposed amendment was adopted in compliance with *Section* 26 of the general incorporation law of the State (*Rev. Code* 1915, § 1940) when, in his opinion, to legally accomplish the purpose sought, it should have been adopted in compliance with *Section* 28 of said law (*Section* 1942) and because the filing of such a certificate would be contrary to the established practice in the office of the Secretary of State.

The total authorized capital stock of the plaintiff corporation, at the time of the adoption of the proposed amendment, was five million shares of preferred stock of the par value of five dollars a share, amounting in the aggregate to twenty-five million dollars, and seven million five hundred thousand shares of common stock without nominal or par value.

Of the authorized stock there had been issued three million, eight hundred and ninety thousand, two **hundred** and seventy-six

shares of preferred stock, and five million, seven hundred and eleven thousand, three hundred and two shares of common stock having no par value. By the amendment it is proposed that the total authorized capital stock of the corporation shall be five hundred thousand shares of "A" preferred stock of the par value of fifty dollars per share, amounting in the aggregate to twenty-five million dollars; and one million, five hundred thousand shares of "A" common stock, without nominal or par value.

It is further provided in the amendment that the entire voting power of the corporation shall be lodged in the holders of the preferred stock and the holders of the common stock without nominal or par value, and that the holders of the "A" preferred stock are to have ten votes for each full share thereof, or one vote for each one-tenth share thereof, represented by fractional certificates of said "A" preferred stock; holders of "A" common stock are to have five votes for each full share thereof, and one vote for each one-fifth share thereof, represented by fractional certificates of "A" common stock.

The parts of *Sections* 26 and 28 of the general incorporation laws material to the issue here involved are as follows:

*Section* 26. "Any corporation of this State, * * * may, from time to time, when and as desired, amend its charter of incorporation * * * by increasing or decreasing its authorized capital stock; or by changing the number and par value of the shares of its capital stock;" etc.

*Section* 28. "Any corporation organized under this chapter may reduce its capital stock at any time by a vote of, or by the written consent of stockholders representing two-thirds of its capital stock," etc. * * * "No such reduction, however, shall be made in the stock of any corporation until all its debts which are not otherwise fully secured shall have been paid and discharged. * * * The decrease of capital stock issued may be effected by retiring or reducing any class of the stock, or by drawing the necessary number of shares by lot for retirement, or by the surrender of every shareholder of his shares, and the issue to him in lieu thereof of a decreased number of shares, or by the purchase at not above par of certain shares for retirement, or by retiring shares owned by the corporation or by reducing the par value of shares."

To amend a certificate of incorporation under *Section* 26, a majority vote of the stockholders is required.

[1] The Secretary of State has the right, and it is his duty, to refuse to file an amendment to a certificate of incorporation

that is sought to be made under a section of the law that does not authorize the proposed amendment, but if the thing sought to be done might be legally done under the amendment offered, the Secretary has no right to refuse to file it because he thinks the corporation may do something thereunder which could only be legally done under a different section of the law.

If the purpose of the corporation, in securing the desired amendment, was to decrease the number of the shares of its capital stock, without reducing the capital represented by the stock, a procedure under *Section* 26 would seem to be appropriate and permissible, because the section provides that a corporation may amend its charter by decreasing its authorized capital stock or by changing the number and par value of the shares of its capital stock.

The State admits that the amendment is good so far as it relates to the reduction in the number of shares, and the increase in the par value of preferred stock, because, after the provisions of the amendment are carried into effect, the capital, as distinguished from shares, would be the same, and the financial interests of creditors and stockholders would not be affected. But it is insisted that the amendment is not good as to the no par stock.

[2] The question is, whether *Section* 26, under which the amendment was adopted, authorizes a decrease in the number of the shares of no par stock issued, as well as authorized and unissued? We think it does because shares of no par stock represent aliquot or proportionate parts of the capital, and when decreased in the same proportion, they represent the same aliquot or proportionate parts of the capital.

[3] It being possible for the corporation, under *Section* 26, to issue the shares of no par stock as proposed in the amendment, we will assume that it will be done in the manner in which it can be legally done, so that only the shares will be reduced and the capital remain unchanged.

If the decrease in the number of shares is to be made in a way that would diminish the capital it represents, as by the disbursement of a portion of capital assets among stockholders, the procedure to amend must be as provided in *Section* 28.

[4]   When the two sections are read together and carefully considered, it seems clear that *Section* 26 was designed primarily for the convenience of the corporation, and *Section* 28 for the protection of the creditors and stockholders of the corporation.

It is a well-known fact that corporations sometimes desire to greatly reduce the number of the shares of their capital stock for business reasons only, and no creditor can be injured thereby if the capital of the corporation is not decreased. But it is otherwise if not only the shares, but the capital they represent is reduced. And manifestly that is the reason for the requirement in *Section* 28, that no reduction shall be made in the capital stock of a corporation until all its debts are paid. It means that the capital of the corporation, which is the creditors' security, shall not be impaired. It will be observed that the procedure provided in *Section* 28 for reducing capital stock is very different, and much more strict and exacting, than that provided in *Section* 26 for decreasing capital stock and changing the number and par value of its shares; and the only reasonable explanation is, that if the corporation wants to reduce its capital stock in some way that will diminish its capital, and thereby impair the creditors' security, the strict requirements of *Section* 28 must be met. But if the purpose is simply to change the number of shares for the convenience of the corporation, without diminishing the capital, then the easier procedure of *Section* 26 may be followed.

[5]   Whether *Section* 26 or *Section* 28 applies in a particular case depends, not upon the character of the stock to be decreased, whether with or without par value, but upon the manner and effect of the proposed reduction.

The test by which the application of *Section* 26 or *Section* 28 may be determined, is whether the security of creditors or stockholders will be in any wise impaired by the proposed amendment. If the capital which the stock in question represents would not be reduced, the amendment may be under *Section* 26, otherwise it must be under *Section* 28.

Such construction of the law, we think, makes the two sections harmonious, and should remove any confusion or uncertainty

that may exist respecting the proper application of the law to any proposed amendment for reducing the capital stock, or changing the number and par value of the shares of the. capital stock of a corporation.

[6] The conclusion of the Court is, that it being possible for the plaintiff corporation to issue the new no par stock under *Section* 26, the amendment proffered to the Secretary of State should have been accepted and filed. If the corporation should attempt, under the amendment, to reduce its capital stock in such a way as to diminish its capital, which could be legally done only under *Section* 28, the act would be not only unauthorized, but unlawful:

For the reasons stated, the motion of the defendant to discharge the rule and dismiss the petition is refused.