PUBLIC SERVICE COMMISSION ET AL. *vs.* CONSOLIDATED GAS, ELECTRIC LIGHT & POWER COMPANY.

*Public Service Commission—Powers—Gas and Electric Company—Issue of New Stock—Capitalization of Surplus.*

A parenthetical statement, in the demurrer to an amended bill of complaint, that a proposed amendment of a corporate charter had been consummated on a certain date, as stated in open court by counsel at the argument on the demurrer to the original bill, is not a proper method of introducing that fact into the record, and such statement will not be considered on appeal.                                                        p. 95

On demurrer to an amended bill of complaint, only those facts are to be considered which are well pleaded in such bill, and statements made at the bar will be ignored.        p. 95

The question of the amendment of a public service corporation charter by increasing fourfold the number of shares of the authorized common stock, depriving the shares of any nominal or par value, and transforming the outstanding shares of stock into the new form of certificates, is a matter of internal regulation, beyond the control of the Public Service Commission, unless plainly bestowed, and does not affect the consumer or the public.                                            p. 95

The jurisdiction of the Public Service Commission begins as soon as a public service company starts to use its granted powers, and then adequate authority is delegated to the commission in respect to all those corporate activities which affect the interest of the public and require supervision and regulation.                                                                          p. 96

Under Code 1924, art. 83, secs. 4, 28, 39, a public service corporation has the right to amend its charter by substituting a common stock in a specified number of shares without any normal or par value, for its authorized issued and unissued stock, divided into a certain number of par value shares.   p. 96

Where a gas or electrical corporation amends its charter so as to substitute an increased number of no par value shares for par value shares, previously authorized and in part outstanding, in the ratio of four to one, such part of the newly authorized stock as takes the place of original shares as yet unissued can be issued only as authorized by the Public Service Commission, in accordance with Code 1924, art. 23, sec. 392.          pp. 97, 98

Code 1924, art. 23, sec. 392, authorizing a gas or electrical corporation to issue stock for certain objects therein named, provided such issue is authorized by the Public Service Commission, refers to the issue of stock by which new capital is to be acquired for the enumerated objects, and whatever lies outside the purview of this section, but within the general powers conferred by law, may be done pursuant to the terms of the general law with reference to corporations, so far at least as concerns the form and type of common stock certificates, and the manner of their issuance and reissuance.          pp. 98, 99

The issuance by a gas or electrical corporation of shares of stock of no par value, in lieu of par value stock previously outstanding, does not require the consent of the Public Service Commission, such substitution of new stock for old giving the stockholders exactly the same participation in the affairs of the corporation, the same proportionate return in dividends, and the same proportion of the assets when distributed, it not adding to the corporate assets or lessening the corporate liabilities, and it being, for all practical purposes in the administration of the law, immaterial whether the shares of stock are evidenced by certificates with or without a nominal or par value.

pp. 99, 100

The change of the previously outstanding stock with a par value into stock without a par value is not, directly or indirectly, a stock dividend or capitalization of earnings, converting the surplus and net undivided profits into capital.        p. 101

While the ownership of corporate stock includes all the assets, subject to all the liabilities, yet it is an ownership founded upon the capital contributed by the stockholders in the first place, since the surplus and reserves not yet appropriated are the undistributed profits earned by the use of the capital.   p. 102

Although the increment of the capital, consisting of surplus and undivided profits, is the property of the stockholders, it retains its identity as the profits or earnings of capital, and is distributable as such at any time until the corporate owners decide to dedicate it permanently as a part of the capital account, the effect of this dedication not being to procure new assets, though it secures new capital to the extent of the freshly dedicated funds.                                p. 102

The dedication of surplus or unprovided profits, with its resulting conversion into increased capital, may be accomplished through the medium of a stock dividend of either par or no par value stock, but it may not be done indirectly or inferentially, but only in compliance with the precise method prescribed by Code 1924, art. 23, secs. 43, 46, 392, 39.              p. 102

An amendment to the charter of a public service company, providing for the substitution of no par value stock for par value stock, previously authorized and in part outstanding, need not negative in express words the capitalization or impairment of the existing surplus, the corporation entertaining no such a purpose, and not taking a single one of the indispensable statutory steps in that direction.            p. 103

*Decided April 9th, 1925.*

Appeal from the Circuit Court of Baltimore City (Stein, J.).

Bill by William Milnes Maloy against the Consolidated Gas Electric Light & Power Company, to which the Public Service Commission was, upon its request, made a plaintiff

by amendment. From a decree in favor of defendant, plaintiffs appeal. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*William Milnes Maloy* and *J. Wallace Bryan,* for the appellants.

*Charles Markell,* with whom were *Haman, Cook, Chesnut & Markell* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The Consolidated Gas Electric Light & Power Company of Baltimore City is a public service corporation, carrying on its business of selling and delivering gas and electricity in Baltimore and vicinity, and William Milnes Maloy is one of its many customers. The company is within and subject to the provisions of what is generally known as the Public Service Commission Law of Maryland. The company called a special or extraordinary meeting of the stockholders on October 21st, 1924, to consider the advisability of adopting the recommendation of its board of directors to amend the charter of the company so as, *inter alia,* (a) to change the number of shares of the common stock by increasing by four times the then number of shares authorized and likewise the number of shares issued and outstanding, and to provide that all shares of the common stock authorized, issued, or outstanding, should be shares without any nominal or par value instead of shares of the par value of one hundred dollars each; and (b) to empower the board of directors of this corporation to authorize the issuance from time to time of its common stock without par value and securities convertible into shares of its common stock without par value for such consideration as said board of directors may deem advisable.

The day before the meeting, Mr. Maloy filed a bill in the Circuit Court for Baltimore City, alleging that the com-

pany had announced that, if, the meeting of the stockholders
should sanction the proposed change, the new shares without
par value would be immediately issued as proposed with-
out first securing from the Public Service Commission of
Maryland an order authorizing said issue or its amount.
The bill further stated that the commission had been asked
to intervene and require the company to apply to it for an
authorization of the contemplated issue of the new form
of stock, but that the commission had refused because it
had been advised by the Attorney General of Maryland that
it had no power to pass on the propriety of the issue. On
the theory that this left the complainant without other rem-
edy, relief was sought in equity for an injunction to restrain
the company from issuing its shares of no par value in
exchange for the shares of the common stock then outstand-
ing as proposed or otherwise, unless and until there had been
secured from the commission an order authorizing the issue
and the amount thereof.

The court passed an order on October 20th, 1924, direct-
ing the injunction to be issued, unless cause be shown be-
fore October 31st; on October 21st, the company demurred,
and on October 29th the court sustained the demurrer, with
leave to amend. On November 19th, the Public Service
Commission of Maryland prayed to be made a party plain-
tiff, and the commission was granted this request on the
same day, when the bill of complaint was amended only by
making the commission a party plaintiff and by the filing
of other exhibits. The amendment made no changes except
to add the commission as a party plaintiff, and three exhib-
its, which related to events which had occurred before the
filing of the original bill of complaint. The amended bill
was promptly demurred to, and the demurrer was sustained
on November 21st, and on the same day separate appeals
were taken by William M. Maloy and the commission.

The meeting of the stockholders for the purpose of consid-
ering the suggested changes in the charter had not been
held when the bill of complaint was filed. The amendment

of the bill of complaint was after the day of the meeting, but there was nothing in the amended bill of complaint at the time of the second demurrer to inform the court if the charter had been amended as proposed.    The demurrer to the amended bill of complaint stated parenthetically that the proposed modification had been "consummated on the 21st day of October, 1924, as proposed in said resolutions, as stated in open court by counsel for both parties at the argument on the demurrer to the original bill."    We do not approve of this informal method of introducing a fact into the record, nor shall we take into consideration the statements made at bar that the amendment to the charter had been carried out as intended, and that a change of the issued and outstanding certificates of stock into stock of no par value had been accomplished.    The question before the court is on a demurrer, which narrows the facts to those which are well pleaded in the amended bill of complaint. These facts we shall test on their intrinsic merit, waiving any technical defects, so that the substantial questions raised on this appeal shall have an answer.

We are concerned with only the proposal to change by amendment of charter the number of shares of the authorized common stock by increasing it fourfold, to deprive the shares of any par or nominal value, and then to transform the company's issued and outstanding shares of stock into the new form of certificates of stock.

It is insisted that none of these successive steps could be taken until the company obtained the approval of the Public Service Commission.    The question of the wisdom of the company in amending its charter in the form adopted was a matter of internal regulation, beyond the control of the commission, unless plainly bestowed; and it was a matter, also, not affecting either the consumer or the public, or affording a matter of concern to the Public Service Commission.    If the State had not intended the power of amendment to be exercised by the appellee and other corporations of its class, the power would not have been conferred.    The

jurisdiction of the commission begins as soon as a public
service company starts to use its granted powers; and then
adequate authority is. delegated to the commission in respect
to all those corporate activities which affect the interest of
the public and require supervision and regulation. *Bagby's
Code* 1924, art. 23, secs. 2, 3, 28, 39, 392, 388, 397; *Laird
v. B. & O. Ry. Co.,* 121 Md. 179, 189, 190; *People v. Stev-
ens,* 203 N. Y. 7, 19, 197 N. Y. 1; *People v. Willcox,* 200
N. Y. 431, 45 L. R. A. (N. S.) 629; *City, etc., Ry. v.
Washington, etc., Ry.,* 122 Md 655, 658; *North. Cent. Ry.
v. Public Service Commission,* 124 Md. 141, 152; *Public
Service Commission v. United Ry. Co.,* 126 Md. 478, 496;
*Havre de Grace Bridge Co. v. Commission,* 132 Md. 16, 22,
23; *Benson v. Commission,* 141 Md. 398, 401.

It is not open to question that under the Maryland law
the appellee had the right to amend its charter in the man-
ner proposed, so as to substitute a common stock in a speci-
fied number of shares without any nominal or par value,
for its authorized issued and unissued stock, divided into a
certain number of shares, with a par value of one hundred
dollars. *Bagby's Code* 1924, art. 23, secs. 39, 28, 4.

The proposed amendment to the charter of the appellee
expressly provided that "the capital stock of the corpora-
tion, preferred and common, may be issued and disposed of
as and when such issuance may, pursuant to the laws of
Maryland, be authorized by the board of directors and (when
authorization by the stockholders is required by law) by the
stockholders."

When this amendment became operative, the appellee had
a number of shares of stock which were authorized but
unissued, and it had issued and outstanding a large amount
of its original stock. The issued and outstanding stock had
been issued for capital, but the authorized and unissued
stock was merely potential capital, convertible into actual
capital by its issue for value. The evidence of the owner-
ship of the issued and outstanding capital, whether in the
usual form of certificates for shares of stock or otherwise,

had to be changed in order to conform to the altered condition resulting from the amended charter. In order to effect this change it was necessary that the original issued and outstanding certificates of stock be surrendered for cancellation, upon the delivery to the respective stockholders of certificates for four shares of the new shares of the common stock of no par value for every one of the outstanding original shares of common stock having the par value of one hundred dollars. As the specified number of the newly authorized shares of stock was in excess of what would be required for this substitution, the total of the authorized stock fell into two subdivisions. The first subdivision was represented by the number of shares requisite to substitute the new certificates of stock for the old in the ratio of four for one, and the second subdivision was represented by the residual number of the authorized shares of the new style of stock after this contemplated substitution had been made. It is evident that between the two subdivisions (1) of authorized, issued and outstanding stock and (2) of authorized but unissued and not outstanding stock, there is the difference between actual and potential capital.

With respect to the shares of stock taking the place of the original but unissued shares, which constituted the second subdivision or potential capital, there can be no difference of opinion that these shares fall within section 392 of article 23 of *Bagby's Code* 1924, when and as issued, and necessary, (a) for the acquisition of property, the construction, completion, extension or improvement of its plant or distributing system; or (b) for the improvement or maintenance of its service; or (c) for the discharge or lawful refunding of its obligations; or (d) for the reimbursement of moneys actually expended from income or from any other moneys in the treasury of the corporation not secured by or obtained from the issue of stocks, bonds, notes or other evidence of indebtedness of such corporation within five years next prior to the filing of an application with the commission for the required authorization for any of the aforesaid

purposes, except maintenance of service and except replace-
ments, in cases where the applicant shall have kept its ac-
counts and vouchers of such expenditures in such manner
as to enable the commission to ascertain the amount of
moneys so expended and the purposes for which such expen-
diture was made, or, (e) when necessary or desirable, in
the discretion of the commission, to cause the aggregate
capitalization to conform to the fair value of the property
of such corporation as established by the commission pur-
suant to the provisions of section 385.

In order for the corporation to have the power to issue
the shares of stock in the second subdivision, and thereby
convert them from a potential source of capital to actual
capital, the law makes the following conditions precedent:
"provided, and not otherwise, that there shall have been
secured from the commission an order authorizing such
issue, and the amount thereof, and stating that in the opin-
ion of the commission, the use of the capital to be secured
by the issue of such stock, bonds, notes or other evidences
of indebtedness is reasonably required for the said purposes
of the corporation." Code, section 392 of article 23.

The shares of stock in this second subdivision were the
only ones left and available to the appellee for the procur-
ing of future capital through the disposition of shares of
common stock. They alone were free shares. Those of the
first subdivision were dedicated by way of substitution to
the representation of the original shares of capital stock
issued and outstanding prior to the amendment. The able
chancellor held below that the shares of the first subdivision
were not within section 392, and the appellants assign this
conclusion as the chief ground for reversal.

It would seem indisputable that these provisions of sec-
tion 392 are prospective, while not exclusive, in their appli-
cation, and that the issue of stock contemplated is original
stock by which new additional capital is to be acquired for
the enumerated objects. The Court does not understand
that these regulating provisions do anything more than pre-

scribe certain conditions precedent to the exercise of the indicated corporate power to issue stock or securities to secure new capital. Whatever lies outside the purview of these provisions, but within the general corporate powers conferred by law, may be done pursuant to the terms of the general law with reference to corporations, so far, certainly, as the form and type of common stock certificates and the manner of their issuance and reissuance. By this construction the provisions of the Public Service Commission Law and the general incorporation law are given full effect and harmonious operation. See Code, art. 23, secs. 3, 28, 29, 30, 31, 32, 38, 39, 40, 392; *People v. Public Service Commission,* 203 N. Y. 299, 307, 308; *Laird v. B. & O. R. R. Co.,* 121 Md. 179, 187, 192; *People v. Liberty Light and Power Co.,* 121 Misc. Rep. 424, 201 N. Y. Supp. 302.

The first subdivision represented, in a different form but identically in every substantial respect, the original common stock to the extent of its having been issued and outstanding. When the exchange of the certificates of the old for the new shares of stock had been effected, the stockholders were unchanged; the relative holdings of the then issued and outstanding stock, and of the rights and the burdens of membership in the corporation, were the same, while the corporate assets and liabilities, receipts and disbursements, had neither been increased, diminished nor affected in their nature or allocation, and the value represented by the aggregate of the new stock remained equivalent to that of the old, without a single existing stockholder obtaining any advantage over any other stockholder. In short, the shares without par value gave the stockholders exactly the same participation in the affairs of the corporation, the same proportionate return in dividends, and the same portion of the assets when distributed. As both par and no par stock can be alike sold under the Maryland statute for any consideration (*Bagby's Code* 1924, art. 23, sec. 43), the change from a stock with a par value no longer loses to the company and its original stockholders the theoretical, if not

actual, advantage of the provision that all future issues of authorized but unissued stock must be sold at not less than par. The issuance of the new certificates for shares of stock with no par value did not add a penny's worth to the assets of the company in cash, property, or services, or in the reduction of its liabilities or the lessening of its obligations for expenses. The capital stock remained as it was. The number of shares into which it was divided alone was increased fourfold. The new certificate of stock, therefore, was merely a substitution of a somewhat different form of token, muniment, or evidence of title for another representing the same thing. *Hood Rubber Co. v. Commonwealth,* 238 Mass. 369; *Olympia Theatre v. Commonwealth,* 238 Mass. 374, 376-7.

We take it to be incontrovertible that the original issued and outstanding shares of common stock of the appellee as well as the substituted shares of its no par stock are essentially representative in succession of the same unchanged corporate subject matter, as every share of either form of stock was, in turn, the evidence of a subsisting title which arose from a past contribution to the capital of the appellee. *Heller v. Marine Bank,* 89 Md. 602, 610. This contribution, in the form of money, property, or services, was the consideration for the issue of the original stock. The consideration had passed into the capital account of the company, and its actual value and significance as a factor in the elements constituting the basis upon which the Public Service Commission rested its conclusion and orders, were determined independently of such a nominal element as the face value of the stock. The commission is not controlled by past contributions to capital. Through an elaborate and minute investigation, with the aid of engineers, accountants, appraisers, and a corps of other experts, the commission first masters the details and present worth of the assets in order to place upon the then existing corporate property a fair valuation, which then becomes its basis and guide in formulating and passing its orders and regulations. Fur-

thermore, the commission supervises and controls the form, manner, and content of the accounts of public service corporations, and has unrestricted access to their affairs. The commission is amply endowed with power to pierce the form of corporate assets, liabilities, and acts to their substance. *Bagby's Code* 1924, art. 23, secs. 385, 386, 388. For all practical purposes in the administration of the law, it is, therefore, immaterial whether the shares of stock are evidenced by certificates with or without a nominal or par value. *Havre de Grace Bridge Co. v. Pub. Serv. Commission,* 132 Md. 16, 26, 29; *Southwestern Bell Telephone Co. v. Pub. Serv. Commn.,* 262 U. S. 276, 282, 287; *Bluefield Co. v. Pub. Serv. Commn.,* 262 U. S. 679, 684, 692; *Smyth v. Ames,* 169 U. S. 466, 544, 548.

The appellants, however, have insisted that the transformation of the original issued and outstanding common stock of the appellee into certificates of stock with no par value consolidated the company's capital, surplus and net undivided profits, so that the no par value stock which was to be issued in the stead of the former stock with a par value would become the representative of this merged capital, surplus and net profits in the form of capital. In other words, that the change of the former issued and outstanding stock with a par value into stock with no par value was, in effect, although indirect, a stock dividend or capitalization of earnings which converted the surplus and net undivided profits into capital.

However, this is not a tenable position, because, in the sense in which it is now being considered, stock, whether evidenced by a certificate of shares, with or without a nominal value, is the total of all the corporate wealth and resources at any given time, subject to all corporate liabilities and obligations. The net capital stock is, consequently, always the difference between the total assets and the total liabilities, and it may be in the form of three items, (1) capital, which represents the original amount contributed in money or property or services; (2) surplus, which repre-

sents the earlier undistributed profits, and (3) undivided profits, which are the later, and usually smaller, undistributed profits. The surplus and undivided profits are the increment of capital so defined.

While, in this discussion, the Court has treated the stockholders as the substantial owners of the corporate assets in order to simplify the presentation of the question before us, yet it does not ignore the distinction, which must be made in particular instances, between the legal ownership of the capital or capital stock, which is in the corporation as a legal entity or person, and of the ownership of stock, which is in the individual stockholders, according to their respective holdings.

The stock is constant in what it may embrace, although its variable value may appreciate or depreciate with the fluctuation in value or with the existence or non-existence of the various kinds of property which may compose it, and although its ownership may be divided in many fractional parts, for which the stock certificates issued may bear the par value of every share or be without any par value. While the ownership of the stock, therefore, includes all the assets, subject to all the liabilities, yet it is an ownership which is founded upon the capital contributed by the stockholders in the first place, because the surplus and reserves not yet appropriated are the undistributed profits earned by the use of the capital. Notwithstanding this increment of capital is the property of the stockholders, it retains its identity as the profits or earnings of capital and is distributable as such at any time until the corporate owners decide to dedicate it permanently as a part of the capital account. The effect of this dedication is not to procure new assets, but it does secure new capital to the extent of the freshly dedicated funds.

There can be no doubt that this dedication of surplus or undivided profits, with its resulting conversion into increased capital, may be accomplished through the medium of a stock dividend of either par or no par value stock, but it may not be done indirectly or inferentially, but only in

compliance with a precise statutory method. *Bagby's Code* 1924, art. 23, secs. 43, 46, 392, 39. The appellee did not intend to merge the original contribution to its capital with its surplus, in the change from a stock with a par value to a stock without a par value. In the first place, the appellee took all of its authorized stock of the par value of one hundred dollars, whether issued, outstanding, or unissued, and increased the number of the shares fourfold by the subdivision of every authorized original share, and gave for every share of the old stock four shares of the new no par stock. The new stock was to be absolutely the equivalent of the old, and, so, the surplus was no more capitalized under the new stock than it had been under the old. Again, the surplus was $4,579,317.29 as of November 19th, 1924. If it had been intended to capitalize this by a stock dividend, it would have been necessary to have provided for it in accordance with the statute, and the stock dividend declared would probably have yielded to every holder of four no par shares an additional one no par share as a stock dividend, after obtaining from the Public Service Commission an order authorizing such issue as a stock dividend. There was no need of negativing in express words that the amendment of the charter was to be made without capitalizing or impairing the existing surplus, as there is no suggestion on the record that the appellee entertained such a purpose, or took a single of the indispensable, positive, statutory steps in that direction. Under the statute, it would have been necessary, *inter alia,* to have set out in the preliminary proceedings "certain specified consideration," whose actual value, in the case of surplus or net profits, had to be "an amount equal to the surplus or net profits thereby capitalized." *Supra; Hood Rubber Co. v. Commonwealth,* 238 Mass. 369, 371, 372; *Olympia Theatres, Inc., v. Commonwealth,* 238 Mass. 374, 376, 377; 25 *Columbia Law Review,* 50, 51.

The Court has stated its views at length because of the importance of the question and its novelty. Our conclusion is that the contemplated substitution of certificates of shares

of no par stock for the original issue of shares of par stock, at the rate of four for one, is fundamentally a mere alteration in the number and form of the shares of stock of the appellant, that is accomplished by a surrender of the old certificates and their reissue in a new form. The reissue of the original outstanding stock of the appellee in its equivalent in no par stock does not fall within either the letter or the spirit of any provision of the Public Service Commission Law. The view of the Court will result in an affirmance of the decree.

*Decree affirmed, with costs to the appellee.*