**RIO GRANDE OIL CO. v. WELCH, Former Collector of Internal Revenue.**

No. 8990.

Circuit Court of Appeals, Ninth Circuit.

Feb. 9, 1939.

H. L. Dunnigan, Gordon A. Goodwin, and Hill, Morgan & Bledsoe, all of Los Angeles, Cal., for appellant.

James W. Morris, Asst. Atty. Gen., and Sewall Key and E. F. McMahon, Sp. Assts. to Atty. Gen. (Ben Harrison, U. S. Atty., E. H. Mitchell, Asst. U. S. Atty., and Eugene Harpole, Sp. Atty., Bureau of Internal Revenue, all of Los Angeles, Cal., of counsel), for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Appellant sued appellee, Collector of Internal Revenue, to recover an amount assessed as documentary internal revenue stamp taxes of which payment had been made under protest. From a judgment denying recovery this appeal was taken.

The tax was assessed on the issue of shares of appellant's stock in exchange for its outstanding shares. The statute involved is § 800 of the Revenue Act of 1926, c. 27, 44 Stat. 9, 101, 26 U.S.C.A. § 900. So far as material, it imposed a tax "on each original issue, whether on organization or reorganization, of certificates of stock" of corporations. Treasury Regulations 71, Art. 29, promulgated under the 1926 act, enumerates issues which are not subject to the tax. Subdivision (i) of this article enumerates as not taxable "the issue by a corporation of certificates of stock in exchange for outstanding certificates of its own stock where such exchange is effected without the capital of the corporation being increased, either by transfer of surplus to capital account or otherwise." [1]

The question here is whether the exchange made by appellant was effected without increase of its capital. The lower court determined that the transaction involved an increase.

Appellant was incorporated in 1925 in Delaware. Originally its capital stock consisted of 400,000 shares of the par value of $25 per share. Of this amount 240,000 shares ($6,000,000 par value) were issued and outstanding. The federal stamp tax had been paid on the original issue.

On December 10, 1928 the stockholders of appellant, at a meeting called and held for that purpose, amended the certificate of incorporation. On December 24 the amendment became effective by being filed with the proper officer of the state of Delaware. The amendment consisted of the striking out of paragraphs Fourth and Fifth of the original certificate and substituting in lieu thereof new paragraphs numbered Fourth and Fifth as follows:

"Fourth: The total number of shares authorized of the corporation's capital stock is two million (2,000,000) shares and such shares are without nominal or par value. The shares of capital stock of this corporation may be issued by this corporation from time to time for such consideration as may be fixed from time to time by the Board of Directors of this corporation. Of the two million (2,000,000) shares of capital stock without nominal or par value herein provided for there shall be issued to the holders of the certificates then outstanding for any of the four hundred thousand (400,000)

shares of common capital stock of the par value of Twenty-five Dollars ($25.00) each of this corporation heretofore authorized, in place thereof, five (5) shares of the new stock for one (1) share of the old, and the holders of the outstanding certificates for any of such four hundred thousand (400,-000) shares of common capital stock of the par value of Twenty-five Dollars ($25.00) each, heretofore authorized, shall surrender the same to the corporation for cancellation and shall receive and accept in place thereof certificates for shares of the new capital stock without nominal or par value, at the rate of five (5) shares of the stock herein provided for without nominal or par value for one share of the common capital stock of the par value of Twenty-five Dollars ($25.00) each now outstanding. **The intent of this certificate of incorporation as amended is that the two million (2,000,000) shares of capital stock herein provided for shall take the place of the four hundred thousand (400,000) shares of common capital stock authorized by the original certificate of incorporation, and that the five (5) shares of the new capital stock for each share of the old common capital stock shall take the place of said old common capital stock, without any transfer of surplus or undivided profits to capital account to represent the same.**

"Fifth: The number of shares with which this corporation will commence business is two hundred (200) shares, without nominal or par value." (Emphasis supplied).

Between December 27, 1928 and August 31, 1929 appellant issued 1,200,000 shares of the new no par stock in exchange for its 240,000 shares of outstanding par value stock, in line with the amendment. No consideration of any kind was received for the new stock except the surrender of the old certificates. Save for the possible effect of certain matters now to be stated, the transaction was no more than an exchange, and under the express provisions of the quoted regulations the exchange would not be taxable.

However, the trial court concluded, and the Collector here contends, that an increase of appellant's capital was effected through further proceedings taken by appellant's board or by entries made in its books.

On December 10, 1928, the same day the stockholders amended the certificate of in-

---

[1] The statute has been re-enacted several times without change in verbiage while this regulation was in effect.

corporation, appellant's board of directors adopted the following resolution:

"Resolved, that the proper officers of this corporation are hereby authorized and directed to make a reappraisal of all of the properties of the corporation and to set up as the valuation of the shares of the capital stock of the corporation without nominal or par value, the proper valuations of the properties of the corporation, in accordance with such reappraisal and in accordance with good and proper accounting practices and to assign to such valuation of the capital stock of the corporation any portion of the surplus accounts of the corporation heretofore arising through reappraisal or revaluation of its properties."

Pursuant to this resolution appellant's officers made a reappraisal of its property. The property consisted solely of the entire stock of the Rio Grande Oil Company, a Texas corporation, which owned a number of oil wells. On the reappraisement the value of the stock of this subsidiary was determined to be $30,000,000 greater than the value at which it had previously been carried on appellant's books.

As of December 31, 1928 book entries were made charging appellant's asset account with $30,000,000, as appreciation on its investment in the stock of the Texas subsidiary, and crediting its liability account as follows: "Value of capital stock outstanding appreciation $30,000,000."

Appellant had an account entitled "Value of Capital Stock Outstanding", this being the only capital account carried on its books. The entries in this account, in tabulated form, appear as follows:

| 1928 | | Debit | Credit |
|---|---|---|---|
| Dec. 10 | Old Capital Stock.... | | $ 6,000,000.00 |
| Dec. 31 | Appreciation on stock of R. G. O., Texas.... | | 30,000,000.00 |
| | Paid in Surplus...... | | 596,600.00 |
| Dec. 31 | From General ledger additional value, R. G. O., Texas, by appraisements as per that company's books | | 1,942,144.00 |
| | Total ............ | | $38,538,744.62 |

No entries or charges were made in this account between December 31, 1928 and the end of August, 1929.

On January 7, 1929 appellant made application to list its new no par stock on the New York Exchange. In the application, which appears to have been prepared by Exchange experts, appellant listed among its liabilities "Capital Stock outstanding: 240,000 shares at par value $25.00 each $6,000,000.00", and "Surplus (see analysis of surplus herewith) $34,516,762.12." Appended was an analysis of consolidated surplus as of October 31, 1928, which contains in a column denominated "Surplus from Appreciation" an item of $30,000,000 described as "Appreciation, account of developments at Elwood Terrace, Santa Barbara County and Long Beach, Los Angeles, California (subject to additional increases upon completion of valuation reports)."

The following note was appended to the application: "Giving effect to the amendment to the Certificate of Incorporation on exchange of five shares of capital stock without nominal or par value for each share of common capital stock of $25.00 par value each, the capital stock and surplus accounts will be adjusted to read substantially as follows: Capital stock outstanding 1,200,000 shares without nominal or par value, valued at $38,538,744.62. Earned Surplus $1,978,017.50."

The intricacies of the book entries need not be explored further. They are inexplicable except on the theory of a transfer of surplus from appreciation, together with paid in surplus, to capital account. Book entries alone, however, would not be decisive of the matter. An increase or decrease in the stated capital of a corporation effects a fundamental change in the corporate structure, 13 Am.Jur., Corporations, § 182; Peck v. Elliott, 6 Cir., 79 F. 10, 16, 38 L.R.A. 616; and formal action on the part of the corporation is necessary to bring such changes about. In modern practice they are usually governed by statute and, where so governed, changes in stated capital may be effected only through pursuit of the statutory method. State ex rel. Radio Corporation of America v. Benson, 2 W.W. Harr.,Del., 576, 128 A. 107.[2] The general corporation laws of the state of Delaware, as amended in 1927 (Title Nine, Chapter 85, Section 8, Laws of Delaware, 1927), so far as here material, provide: "Any corporation may by resolution of its Board of Directors determine that only a part of the consideration which shall be received by the corporation for any of the shares of its capital stock which it shall issue from time to time shall be capital; provided, however, that, in case any of the shares issued shall be shares having a par value, the

---

[2] See discussion in 48 Harvard Law Review 1334.

amount of the part of such consideration so determined to be capital shall be in excess of the aggregate par value of the shares issued for such consideration having a par value, unless all the shares issued shall be shares having a par value, in which case the amount of the par value of such consideration so determined to be capital need be only equal to the aggregate par value of such shares. In each such case the Board of Directors shall specify in dollars the part of such consideration which shall be capital. If the Board of Directors shall not have determined (a) at the time of issue of any shares of the capital stock of the corporation issued for cash, or (b) within sixty days after the issue of any shares of the capital stock of the corporation issued for property other than cash what part of the consideration for such shares shall be capital, the capital of the corporation in respect of such shares shall be an amount equal to the aggregate par value of such shares having a par value, plus the amount of the consideration for such shares without par value. **The capital of the corporation may be increased from time to time by resolution of the Board of Directors directing that a portion of the net assets of the corporation in excess of the amount so determined to be capital be transferred to capital account. The excess, if any, at any given time, of the total net assets of the corporation over the amount so determined to be capital shall be surplus.**"

■■ The amendment of appellant's certificate of incorporation provided for no more than a change in the character of the stock and for a splitting up of the shares in the ratio of five shares of new stock for one share of the old. There is no presumption that the process involved an increase in capital. See Whitman v. Consolidated Gas, Electric Light & Power Co., 148 Md. 90, 129 A. 22, 28. Compare State ex rel. Radio Corporation of America v. Benson, supra. The amended certificate provided in express terms that the change should take place "without any transfer of surplus or undivided profits to capital account to represent the same." The amendment, however, in no wise determined what was to be done thereafter in the way of adjustments. While the stockholders no longer had par value stock, they still had certificates to exchange; and the incidence of the stamp tax is at the time of the exchange.

■ The Delaware statute imposes on the board of directors the duty and authority

of determining what the capital shall be and of increasing it by resolution in their discretion. The resolution, heretofore quoted, was adopted after the amendment of the certificate, and it was then within the power of the board to make the determination authorized by the statute.

■ The resolution of the directors is entirely consistent with the subsequent book entries and with the declaration made in the application for exchange listing. Appellant's officers obviously understood it as directing that the valuations of the properties, as shown by the reappraisal, together with any portion of the existing surplus account theretofore arising through reappraisal, be assigned to capital. That, in terms, is what the resolution says. We cannot but assume that the officers knew what they were about and that they correctly interpreted the board's action.

The exchange of shares was thus accompanied by an increase in capital through a transfer of surplus to capital account, and the transaction was taxable.

Affirmed.