## SOUTHERN PAC. CO. v. BERLINER, Former Collector of Internal Revenue.

### No. 25664-R.

District Court, N. D. California, S. D.

July 16, 1948.

George L. Buland and Frank J. Gallagher, both of San Francisco, Cal., for plaintiff.

Frank J. Hennessy, U. S. Atty., and William E. Licking, Asst. U. S. Atty., both of San Francisco, Cal. (Theron Lamar Caudle, Asst. Atty. Gen., and Andrew D. Sharpe and F. A. Michels, Sp. Assts. to Atty. Gen., on the brief), for defendant.

ROCHE, District Judge.

Plaintiff seeks to recover the sum of $46,687.95 with interest, on account of an alleged overpayment of documentary stamp taxes. The tax was levied on shares of no-par value stock issued in exchange for par value stock and the question for decision is whether, under the circumstances of this case, such issue constituted an "original issue" within the meaning of Sections 1800 and 1802 of the Internal Revenue Code.[1] The facts were stipulated and are substantially as follows:

During the tax period involved the plaintiff existed as a Kentucky corporation en-

---

[1] "Sec. 1800. Imposition of Tax.

"There shall be levied collected, and paid, for and in respect to the several bonds, debentures, or certificates of stock * * * and things mentioned and described in sections 1801 to 1807, inclusive, * * *." 26 U.S.C.A. Int.Rev.Code, § 1800.

"Sec. 1802 (as amended by Revenue Act of 1939, c. 247, 53 Stat. 862, Sec. 1). Capital Stock (and Similar Interests).

"(a) Original issue. On each original issue, whether on organization or reorganization, of shares or certificates of stock, or of profits, or of interest in property or accumulations, by any corporation, or by any investment trust or similar organization (or by any person on behalf of such investment trust or similar organization) holding or dealing in any of the instruments mentioned or described in this subsection or section 1801 (whether or not such investment trust or similar organization constitutes a corporation within the meaning of this title), on each $100 of par or face value or fraction thereof of the certificates issued by such corporation or by such investment trust or similar organization (or of the shares where no certificates were issued), 10 cents until July 1, 1941, and 5 cents thereafter: Provided, That where such shares or certificates are issued without par or face value, the tax shall be 10 cents until July 1, 1941, and 5 cents thereafter, per share (corporate share, or investment trust or other organization share, as the case may be), unless the actual value is in excess of $100 per share; in which case the tax shall be 10 cents until July 1, 1941, and 5 cents thereafter, on each $100 of actual value or fraction thereof of such certificates (or of the shares where no certificates were issued), or unless the actual value is less than $100 per share, in which case the tax shall be 2 cents until July 1, 1941, and 1 cent thereafter, on each $20 of actual value, or fraction thereof, of such certificates (or of the shares where no certificates were issued). The stamps representing the tax imposed by this subsection shall be attached to the stock books or corresponding records of the organization and not to the certificates issued." 26 U.S.C.A. Int.Rev.Code, § 1802.

gaged in business in interstate commerce as a common carrier by rail. Prior to April, 1940, plaintiff's capital stock consisted of 5,944,518 common shares, each having a par value of $100. Of these, 3,772,763.0564 shares were issued and outstanding and 2,171,754.9436 shares were unissued. Any stamp tax due on the issued shares had been paid. In April, 1940, the articles of incorporation were amended to provide for changing the capital stock from par value to no-par value shares and an even exchange was effected with the par value shareholders. This change in the type of stock did not affect the proportionate interest of the shareholders in the corporation's assets, and had the capital stock account remained unchanged, the new issue would have been free from any stamp tax. American Laundry Machinery Co. v. Dean, D.C., 292 F. 620.

However, prior to the exchange the stock account, which was kept according to the Interstate Commerce Commission regulations, showed capital stock in the sum of $377,276,305.64 (the total par value of the issued stock) and premium on capital stock in the sum of $6,304,845. This premium resulted from the sale to bondholders of nine shares of stock at $145 a share and the conversion of bonds into paid-up shares of common stock at the rate of $130 par value of bonds for each $100 par value of stock. The premium thus represented the amount received in excess of the stock par value.

After the exchange of no-par value stock for the par value stock, the amounts previously listed separately in the stock account as "Capital Stock" and "Premium on Capital Stock" were merged and the total of the two, $383,581,150.64, was placed in the "Capital Stock" subaccount.

The Commissioner of Internal Revenue determined that the transfer of the amount previously listed as "Premium on Capital Stock" to the "Capital Stock" subaccount resulted in additional capital being dedicated to the capital stock account; that this represented capital upon which no previous issue tax had ever been paid; that the new capital and old capital were so intermingled that it was impossible to allocate to the new capital any of the no-

par value shares, and that as a result the entire new issue of no-par value stock was subject to the stamp tax. The tax was paid under protest and claim for refund was denied.

Plaintiff, which now exists as a Delaware corporation, contends that the issue of no-par value stock did not result in the dedication of additional capital so as to make the issue an "original issue" within the meaning of the statute, and alternatively, that even if the original issue tax be deemed applicable, it should be limited to that portion of the total issue representing the $6,304,845 "Premium on Capital Stock" which was transferred to the "Capital Stock" subaccount.

Plaintiff's position rests on the proposition that the premium on capital stock was always a part of the capital stock account and was set up separately, prior to the exchange of stock, only because Interstate Commerce Commission regulations so required; that the regulations likewise required its merger with the capital stock account, after the exchange of no-par value for par value stock, but that this was merely accounting procedure. In effect, plaintiff argues that it is now being penalized by one Government department for doing what another department required.

The courts have interpreted the term "original issue", as used in Section 1802, supra, to be applicable to a new issue where the capital stock account has been increased either by receipt of additional consideration for the new stock or by the transfer of a given amount from paid-in surplus or earned surplus. If definite shares of the new issue can be identified as having been issued against the increase in capital, the tax is levied only on such shares. If there is such an intermingling of old and new capital that such identification is impossible, the entire new issue is taxable. This is true because the tax is not on the capital behind the shares of stock but is measured by the par value of the shares (or actual value if not par value shares) represented by each stock certificate. W. T. Grant Co. v. Duggan, 2 Cir., 94 F.2d 859; Rio Grande Oil Co. v. Welch, 9 Cir., 101 F.2d 454; United States v. Pure Oil Co., 7 Cir., 135 F.2d 578.

When the corporation had only par value stock its capital stock account represented the sum total of $100 par value for each share of stock issued. The premium' on capital stock represented paid-in surplus and, under Kentucky corporation law, could have been distributed as dividends, a disposition that could not have been made of any part of the capital stock account. With the exchange of the par value stock for an equal number of no-par value shares and the transfer of the amount in the premium account to the capital stock account, the total amount of capital behind the shares was increased. The fact that the transfer may have been required by Interstate Commerce Commission regulations does not change the realities of the situation. While the $6,304,845 remained in the premium account no shares of stock were issued against it and therefore, no original issue tax was ever paid with respect to that amount. When it became part of the capital stock account against which the new shares were issued without any allocation of specific shares to such transferred sum, each share represented both old and new capital and was thus·taxable as an original issue under the statute. American Gas & Electric Co. v. United States, D.C., 69 F.Supp. 614.

In accordance with the foregoing it is, therefore, ordered that there be entered herein, upon findings of fact and conclusions of law, judgment in favor of the defendant and against the plaintiff and that the defendant recover his costs in this behalf expended.