**CALIFORNIA ELECTRIC POWER CO. v. UNITED STATES.**

No. 7888–BH.

United States District Court
S. D. California, Central Division.

March 16, 1950.

270

Dempsey, Thayer, Deibert & Kumler, Los Angeles, Cal., for plaintiff.

Ernest A. Tolin, United States Attorney, E. H. Mitchell and Edward R. McHale, Assistant United States Attorneys, Eugene Harpole and James D. Pettus, Special Attorneys, Bureau of Internal Revenue, Los Angeles, Cal., for defendant.

HARRISON, District Judge.

This is an action to recover the sum of $4,549.51, alleged to have been erroneously exacted from the plaintiff, under Section 1802(a) of the Internal Revenue Code, Title 26 U.S.C.A., prior to the amendment of 1947, as a documentary stamp tax upon a certain issue of stock by plaintiff. The question for decision is whether the entire issue or only a part thereof of plaintiff's new preferred stock constituted an original issue within the meaning of Section 1802 (a). The facts were stipulated and are substantially as follows:

Prior to the time of the recapitalization in June of 1941, plaintiff's capital stock consisted of 105,023 preferred shares, each having a par value of $100, and 84,683 common shares, each having a value of $10. The stamp tax due on this stock had been paid. On June 20, 1941, the certificate of incorporation was amended to provide that each of the outstanding shares of old preferred stock were to be automatically converted into ⅘ share of $3 cumulative preferred stock of a par value of $50 each, and six shares of common stock of a par value of $10 each. This amendment was to be effective June 30, 1941. This change did not affect the proportionate interests of the shareholders in the corporation's assets. By itself this transaction would have been free of any stamp tax.

However, on June 30, 1941, the effective date of the amendment, the unpaid cumulative dividends on the old preferred stock were $11 per share. To settle the arrearages of dividends the Board of Directors had previously, by resolution, on May 29, 1941, authorized the making of an offer to the preferred shareholders of ⅕ share of $3 cumulative preferred stock and $1 in cash in full settlement of all arrearages on each share. The offer was to remain open until June 25, 1941, and was contingent on the amendment of the certificate of incorporation by the shareholders.

Pursuant to the plan for settlement of the dividend arrearages plaintiff issued new $3 stock on a one new for five old basis to the shareholders accepting the offer. Upon completion of the exchange, new capital sufficient to pay the dividend arrearages was transferred from surplus to the preferred stock account, so that the interest of the preferred stockholders accepting the offer was transmuted from a claim for dividends into additional shares of stock representing capitalized surplus.

Stated simply for the purposes of illustration, the two transactions may be compared as follows: If shareholder A had 50 shares of the original preferred stock, following the amendment he now has 40 shares of the new preferred stock. If he accepts the offer of stock for dividend arrearages he receives 10 additional shares

of the new preferred stock and $50 in cash. At the same time there is a transfer from surplus to the capital stock account of an amount equal to the share value of the 10 additional shares.

If shareholder B had 50 shares of the original preferred stock, following the amendment he also now has 40 shares of the new preferred stock. If he does not accept the offer of the stock for the dividend arrearages he, of course, receives no additional shares and there is no transfer of any surplus to the preferred stock account. As to shareholder B, there has been no change except an exchange of old preferred shares for new preferred shares. His proportionate claim against the corporation's assets remains unchanged.

The plaintiff admits that the shares issued in satisfaction of the unpaid dividends were within the meaning of the term "original issue" and concedes the tax upon them.

The Commissioner conceded that no tax was due upon the new issue of the common stock but determined that the transfer of the surplus to the preferred stock account resulted in the dedication of additional capital; that this represented capital upon which no previous issue tax had ever been paid; and that the old capital and the new capital were so intermingled that it is impossible to determine which specific shares are represented by new capital added to the preferred stock account.

The tax was paid under protest and the claim for refund was denied.

The applicable statute at the time of the issue, Section 1802(a), imposed a stamp tax on the original issues of capital stock. The tax applies to each original issue (whether on organization or reorganization) of certificates (or shares issued without certificate) of stock, or of profits, or of interests in property or accumulations by any corporation.

The government contends that the entries upon the corporate books fail to disclose any shares specifically designated as a substitution for old certificates. It suggests that inasmuch as no shares were issued in lieu of any certain specified shares

and no specific certificates charged against any particular segment of the capital or surplus, it is impossible to classify the entire issue as other than original. This is the same argument advanced in U. S. v. Pure Oil Co., 135 F.2d 578, 579, a decision of the 7th Circuit on substantially the same facts as we have in the instant case.

The court in U. S. v. Pure Oil Co., supra, refused to adopt this contention. Speaking of the issue of stock by the Pure Oil Company the court stated:

"* * * It accomplished nothing other than replacement of older preferred stock with new, smaller dividend stock; the holders retained the same proportionate interests in the capital assets. *The additional shares issued in satisfaction of unpaid dividends represented the only contribution to capital effectuated*; that and that alone was an original issue, (citing numerous cases) (italics supplied).

"* * * The undisputed fact is that the old preferred stock was exchanged share for share and the dividend arrears satisfied by issuance of additional shares. Whatever the book entries, the only new thing that could properly have gone into the capital account was the contribution by the shareholders of their unpaid dividends to the corporation in consideration of which they received the additional shares."

The government criticises this decision, at the same time it did not endeavor to justify its attempted exaction of over $20,000 by applying for a writ of certiorari. It is interesting to note that Circuit Judge Minton, now a member of the Supreme Court of the United States concurred in said opinion.

The government cites American Gas & Electric Co. v. U. S., D.C.N.Y., 69 F.Supp. 614, in support of its contention that the two issues were so intermingled that they must be treated as one. This decision is not critical of the Pure Oil case as contended by the government. Judge Caffey clearly distinguished the two cases on the facts and I think attempted to justify his conclusions by stating in 69 F.Supp. at page 620 as follows: "* * * Apparent hardship to the taxpayer does not justify a

272

departure from the literal language of the statute."

The government urges two decisions of the Ninth Circuit as authority for its position in this case, Rio Grande Oil Co. v. Welch, 101 F.2d 454, and Southern Pacific Co., v. Berliner, 176 F.2d 671. Both of these cases are clearly distinguished from the present case on the facts. In the Southern Pacific case Judge Healy did not mention the Pure Oil case, which indicates he recognized that factually they were not comparable. The failure to refer to it was intentional as it was cited on another point in the opinion written by Judge Roche in the District Court in Southern Pacific Co. v. Berliner, 78 F.Supp. 696-697.

The authorities cited by the government in support of its interpretation of the statute created serious inequities. Congress, recognizing the inequities created by the interpretation placed upon the statute by the Commissioner, supported by the courts, put a stop to the same by the amendment of 1947. While the amendment is not retroactive, it clearly indicates that the interpretation of the former act did not meet the approval of Congress. Under such circumstances, I see no reason why I should meekly submit to the Commissioner's rulings thereby helping to perpetuate an inequity that Congress has already recognized and precluded its repetition in the future.

From the stipulation of facts I find that the two transactions were sufficiently separate and apart to permit the necessary allocation. The method of keeping the records is not controlling. Southern Pac. Co. v. Berliner, 9 Cir., 176 F.2d 671. In a transaction such as we have in this case, there is no apparent difficulty in allocating the increase in capital to the shares issued in lieu of dividends. The Pure Oil case is very persuasive and also very refreshing and I am accepting it as my guide in this case.

Plaintiff is entitled to judgment as prayed for. Counsel for the plaintiff is directed to submit proposed finding and judgment within 15 days from date hereof.