## UNITED STATES v. CALIFORNIA ELECTRIC POWER CO.

No. 12611.

United States Court of Appeals
Ninth Circuit.

Feb. 15, 1951.

Thomas R. Dempsey, Wellman P. Thayer, Arthur H. Deibert, William L. Kumler, all of Los Angeles, Cal. (Henry W. Coil, Riverside, Cal., Associate Counsel), for appellee.

Before DENMAN, Chief Judge, and ORR and POPE, Circuit Judges.

ORR, Circuit Judge.

This appeal presents the question of the taxability as an "original issue" of certain preferred stock issued by appellee-taxpayer as part of an exchange for the preferred stock outstanding prior to a recapitalization of the corporation. The stamp tax was imposed pursuant to §§ 1800 and 1802(a) of the Internal Revenue Code, 26 U.S.C.A. §§ 1800, 1802(a) (prior to the 1947 amendments), and was paid under protest. Appellee duly sued for a refund, and the Government now appeals from an adverse judgment. 1950, 89 F.Supp. 269.

Appellee is a corporation organized under the laws of Delaware, with its principal place of business in California. Prior to the recapitalization in question here, appellee's capital stock consisted of 105,023 preferred shares (par value $100 per share) and 84,683 common shares (par value $10 per share). The stated capital at that time was thus $11,349,130. On June 20, 1941, at a shareholders' meeting, the certificate of incorporation was amended to provide that each of the outstanding preferred shares should automatically be converted into four-fifths of a share of new preferred (par value $50 per share) plus six shares of common (par value $10 per share). This amendment was to become effective on June 30, 1941. No change in the stated capital of the corporation resulted from this exchange, since the par value of the new stock received by each shareholder was identical with the par value of the stock he had turned in. Appellant concedes that this exchange, had it not been supplemented by the matters described below, would not have been subject to the stamp tax. See Treasury Regulations 71 (1941 ed.) § 113.25(f).[1]

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, Maryhelen Wigle and Louise Foster, Sp. Assts. to the Atty. Gen., Ernest A. Tolin, U. S. Atty., E. H. Mitchell, Asst. U. S. Atty., Los Angeles, Cal., for appellant.

Dempsey, Thayer, Deibert & Kumler,

---

1. "Sec. 113.25. Issues not subject to tax.

\* \* \* \* \* \*

"(f) The issue of stock in a recapitalization or reorganization where there is

On the date of the exchange (June 30, 1941), there were unpaid cumulative dividends on the old preferred in the amount of $11 per share. In order to settle these dividend arrearages, the Board of Directors on May 29, 1941, by resolution authorized the making of an offer to the preferred shareholders of one-fifth share of the new preferred (par value $50 per share) plus $1 in cash in full settlement of the arrearages on each share. This offer was to remain open until June 25, 1941 and was contingent on the amendment of the certificate of incorporation by the shareholders. The offer was accepted by all the shareholders except those holding 301 shares of the old preferred. The corporation transferred from its surplus account to its capital account an amount equal to the par value of the new preferred thus issued in settlement of dividend arrearages. This new preferred was conceded to be taxable under § 1802(a), and the stamp tax paid.

This increase in capital was not set up in a separate capital account but was added to the capital account already in existence. The corporation made no effort to distinguish between the certificates representing new shares issued in exchange for the old shares and the certificates representing new shares issued in satisfaction of unpaid dividends. No certificate carries identification which classifies it with either new capital or old capital. On these facts the Commissioner conceded that no stamp tax was payable on the new common stock, since that was clearly based upon the old capital (as to which a stamp tax had already been paid), but determined that the *entire* issue of new preferred was taxable as an "original issue" because no "particular shares could be segregated and earmarked against any certain part of the augmented capital."

The applicable statute, 26 U.S.C.A. § 1802(a), as it existed at the time of this recapitalization, imposed a stamp tax as follows:

"(a) Original Issue.—On each original issue, whether on organization or reorganization, of shares or certificates of stock, or of profits, or of interest in property or accumulations, by any corporation * * * holding or dealing in any of the instruments mentioned or described in this subsection or section 1801 * * *, on each $100 of par or face value or fraction thereof of the certificates issued by such corporation * * * (or of the shares where no certificates were issued), 11 cents until July 1, 1941, and 5 cents thereafter; *Provided,* That where such shares or certificates are issued without par or face value, the tax shall be 11 cents until July 1, 1941, and 5 cents thereafter, per share * * *, unless the actual value is in excess of $100 per share; in which case the tax shall be 11 cents until July 1, 1941, and 5 cents thereafter, on each $100 of actual value or fraction thereof of such certificates (or of the shares where no certificates were issued), or unless the actual value is less than $100 per share, in which case the tax shall be 3 cents until July 1, 1941, and 1 cent thereafter, on each $20 of actual value, or fraction thereof, of such certificates (or of the shares where no certificates were issued). The stamps representing the tax imposed by this subsection shall be attached to the stock books or corresponding records of the organization and not to the certificates issued. * * *"

As is shown by appellant's concession that the newly issued common stock is not taxable, a dedication of additional capital, accompanied by an identifiable block of new shares, does not subject all the other stock to a second stamp tax under this section, even though "the new capital was commingled with the old capital." To sustain the tax on the entire issue of preferred, appellant relies on the Rio Grande, Southern Pacific and American Gas cases.[2] In those cases, as here, a recapitalization was accompanied by a dedication of addi-

no dedication of additional capital, either by transfer of earned surplus or otherwise."

2. Rio Grande Oil Co. v. Welch, 9 Cir., 1939, 101 F.2d 454; Southern Pacific Co. v. Berliner, 9 Cir., 1949, 176 F.2d 671; American Gas & Electric Co. v. United States, D.C.S.D.N.Y.1946, 69 F. Supp. 614.

tional capital, so that the equity interest of the shareholders in the stated capital was increased. Unlike the instant case, no effort was made to allocate the additional capital to any particular block of the new shares and the entire re-issue was held subject to the stamp tax of § 1802(a). Although the net effect of these recapitalizations may be comparable to a tax-free exchange followed by an independently taxable issue of additional stock, the statute was thought to require this holding, since the statute imposes a tax, not on each new dedication of capital, but on "each original issue * * * of shares or certificates of stock". In the absence of any attempt at allocation, each share of the new issue was considered an "original issue," since it represents a new equity interest in an augmented capital account.

In Rio Grande Oil Co. v. Welch, supra, the certificate of incorporation was amended to provide for a five-for-one split-up of the outstanding stock. The amendment further provided that this split-up was to take place "without any transfer of surplus or undivided profits to capital account to represent the same." Hence, there was no allocating of a subsequent dedication of additional capital to any part of the new stock, and this court properly held that "the question here [in Rio Grande Oil Co. v. Welch, supra] is whether the exchange made by appellant was effected without increase of its capital." Additional facts indicated that there had in fact been a transfer from the surplus to the capital account, and a stamp tax on the entire new issue was therefore sustained.

Similarly, in Southern Pacific Co. v. Berliner, supra, the corporate charter had been amended to provide for the exchange of the outstanding par-value stock for an equivalent number of no-par shares. Shortly thereafter, the corporate accounts were changed so that the stated capital was increased. The taxpayer apparently did not contend that a part of each new no-par share was issued in exchange for the whole of each old par share, and that the remainder was issued against the increase

in capital account. On appeal, this court found that "The dispute * * * narrow(ed) down to the single question whether the Commissioner was right in finding that the exchange effected an increase in capital account." [176 F.2d 673.] The Commissioner's finding in this respect was affirmed.

A more complex scheme of recapitalization was presented in the case of American Gas & Electric Co. v. United States, supra, where also the taxpayer did not contend that the increase in capital account was used as the basis for issuing additional shares, but rather that it was used as the basis for increasing the capital liability per share. Thus, each share represented an interest in an increased capital account, and was therefore an "original issue" within the meaning of § 1802(a). The court distinguished the Pure Oil case [3] on this ground, and sustained the tax on the entire issue. D.C., 69 F.Supp. 620.

In the instant case, however, appellee purported to issue only a certain number of shares against the augmentation of capital, the remainder being issued against the old capital as part of a tax-free exchange. In view of this distinction, appellant now relies on what appears to have been the method of distribution of the new preferred. Apparently a stockholder with one old certificate representing 100 old preferred would receive in exchange therefor, if he accepted the stock offer, one new certificate for 100 new preferred plus one new certificate for 60 new common. Since the corporation cannot show which 80 of those 100 new shares are based on old capital, appellant claims authority to assess the tax on the entire new certificate. Yet appellant claims no authority to assess a tax on the re-issue in the event the same stockholder had received instead one new certificate for 80 new preferred *plus one new certificate for 20 new preferred* plus one new certificate for 60 new common. While the incidence of the stamp tax is admittedly dependent in large measure on the form rather than the substance of the transaction, the language

3. United States v. Pure Oil Co., 7 Cir., 1943, 135 F.2d 578.

of § 1802(a) does not require that formal niceties be carried to this extreme. That section does not impose a tax on the issue of *certificates only,* but on the issue of shares *or* certificates. As is shown by the tax-free character of exchanges not accompanied by an increase in capital, the tax is fundamentally imposed on the share, or interest, and only secondarily on the certificate which represents the share. There is no reason why one certificate cannot represent 80 shares which are not an original issue and 20 shares which are an original issue. In such a case § 1802(a) does not require that the entire *certificate* be taxed as an original issue, but merely imposes a tax on the "original issue * * * of (20) shares." Just as *one* certificate representing 100 shares of original issue is taxed 100 times as much as *one* certificate representing one share of original issue, so the certificate representing 80 shares of re-issue and 20 shares of original issue is taxed 20 times as much as the certificate representing one share of original issue.

A similar allocation of a segment of the new issue against the dedication of additional capital characterized the recapitalization litigated in the United States v. Pure Oil Co., supra. Pure Oil had outstanding 264,226 shares of preferred stock, with accumulated unpaid dividends. These shares were turned in, new preferred was issued, and the amount of the unpaid dividends was apparently transferred to the capital account. Pure Oil, presumably aware of the double taxation occasionally imposed under § 1802(a), purported to designate 264,226 shares of the new preferred as being issued in exchange for the same number of old preferred, the remaining 56,115 new shares being issued in satisfaction of unpaid dividends. The corporate records failed to show that any particular certificate represented either a share issued in exchange or a share issued in satisfaction of dividends, and the Commissioner argued that in the absence of such specific designation the entire new issue was subject to the stamp tax. Reversing the lower court, and distinguishing Rio Grande, supra, the Seventh Circuit held that only the shares issued in satisfaction of dividends were taxable.

In this case we have a further distinction not present in Pure Oil. Here the "two transactions" were authorized by two different groups—one by the shareholders and one by the Board of Directors—at different times. Moreover, the exchange was actually, as well as nominally, independent of the dedication of additional capital and of the issues of new preferred stock on the basis of that dedication. True, the *offer* of the new stock in satisfaction of dividends, conditional upon the exchange, had already been made before the certificate of incorporation was amended to provide for the exchange, but the dedication of additional capital and the issuance of new preferred in satisfaction of dividends were additionally dependent upon the individual acceptances of the option. The increase in capital was not measured automatically by 10 times the number of old preferred shares outstanding prior to the recapitalization, but by 10 times the number of old preferred as to which the offer was actually accepted. In fact, the offer was not accepted by all the shareholders. Since the exchange was an independent transaction, not conditional on the acceptance of the offer by the shareholders, it was sufficiently separable to be regarded as a tax-free exchange.

In Rio Grande and Southern Pacific, supra, the precise question presented here was not raised. No portion of the new stock in those cases could be identified sufficiently to permit the imposition of the stamp tax.

In this case no difficulty is experienced in making a segregation so as to determine those shares upon which the tax should be paid. The number issued in satisfaction of dividends, as distinguished from those exchanged for the shares previously issued, is easily ascertained. The apparent mingling of the old and new shares in one certificate poses no difficulty for the stamps are to be attached to the corporate records and not to the certificate which represents the shares.

■ Congress recognized that the application of § 1802(a) as it existed prior to 1947 resulted in what might be termed double taxation in certain instances and amended the section to eliminate that situation. The amendment has no retroactive effect.

Judgment affirmed.