WILLIAM W. VAUGHAN et al., Copartners under the Firm Name of VAUGHAN & COMPANY, Appellants, *v.* THE STATE OF NEW YORK, Respondent.

(Argued October 15, 1936; decided November 24, 1936.)

*John W. Davis, William F. Unger, Samuel P. Gilman* and *Irving K. Rubin* for appellants.

*John J. Bennett, Jr., Attorney-General (Henry Epstein, Leon M. Layden* and *Caleb Candee Brown, Jr.,* of counsel), for respondent.

LOUGHRAN, J. This is a claim for a refund of stock transfer stamp taxes collected under sections 270 and 270-a of the Tax Law (Cons. Laws, ch. 60), as amended by chapter 643 of the Laws of 1933. It embraces only taxes paid on transfers of par value stock. Its basis is the proposition that the statute deprives the claimants of their property without due process of law and denies to them the equal protection of the laws, contrary to the Fourteenth Amendment of the Constitution of the United States and section 6 of article I of the Constitution

of the State. The Court of Claims dismissed the claim on the merits. Claimants appeal pursuant to Civil Practice Act, section 588, subdivision 3.

The problem presented has its background in the evolution of the challenged legislation.

By section 1 of chapter 241 of the Laws of 1905 there was levied on transfers of stock a tax of two cents " on each hundred dollars of face value or fraction thereof." The constitutionality of that law was upheld in *People ex rel. Hatch* v. *Reardon* (184 N. Y. 431; affd., 204 U. S. 152).

By an amendment attempted in 1906, the tax of two cents was thereafter to be computed " on each share of one hundred dollars of face value or fraction thereof " (Laws of 1906, ch. 414, § 1). In *People ex rel. Farrington* v. *Mensching* (187 N. Y. 8) we ruled that this taxing clause of the act of 1906 was unconstitutional and that the taxing clause of the act of 1905 was not thereby in any way affected. Thereafter the taxing clause of the act of 1905 was transferred to section 270 of the Tax Law. (See the notes to chapter 38 of the Laws of 1910, pp. 64, 65.)

By chapter 351 of the Laws of 1912, the Legislature authorized the issuance of shares of stock without nominal or par value. An amendment to section 270 of the Tax Law followed, providing that " in cases where the shares or certificates of stock are issued without designated monetary value * * * the tax shall be at the rate of two cents for each and every share." (Laws of 1913, ch. 779, § 1.)

This development of section 270 of the Tax Law may conveniently be restated in the text of that section as it stood in 1930 before its amendment in 1933 by the statute here in question. At that time the section imposed a tax measured as follows: " On each hundred dollars of face value or fraction thereof, two cents, except in cases where the shares or certificates are issued without designated monetary value, in which cases the tax shall be

at the rate of two cents for each and every share." (Laws of 1930, ch. 190.)

By chapter 62 of the Laws of 1932 a new section 270-a was added to the Tax Law. This imposed an additional emergency tax equal to that previously payable. These acts of 1930 and 1932 constituted the Stock Transfer Tax Law in force on May 1, 1933, when chapter 643 of the Laws of that year became effective. The act of 1933 is the statute now attacked and we pass to its consideration. Section 1 says: " Declaration of legislative intent. In enacting the amendments hereinafter made to sections two hundred seventy and two hundred seventy-a of the tax law, it is hereby declared to be the intent of the legislature to abolish the distinction heretofore existing, for the purposes of such sections, between shares of stock and other corporate certificates having a par or face value and those having no par or face value and to establish a more just and certain basis for the taxation of the transfer of such stock and certificates under such sections to the end and for the purpose thereby of preventing the continued avoidance of taxes upon such transfer through changes in the kind and number of such stock and certificates and the concomitant loss of revenue accruing to the state by reason of such changes."

Sections 270 and 270-a of the Tax Law were recast by the act of 1933 into a form which, so far as is here material, is as follows: " There is hereby imposed and shall immediately accrue and be collected a tax, as herein provided, on all sales   *   *   *   and all deliveries or transfers of shares or certificates of stock   *   *   *   of one and one-half cents for each and every share, except in cases where the shares or certificates are sold for twenty dollars or more per share, in which cases the tax shall be at the rate of two cents for each and every share." (Laws of 1933, ch. 643, §§ 2, 3.) Thus the Legislature has said that the computation of the tax shall in all cases be based on the number of shares transferred. Is a tax on par shares, so fixed, constitutional? This is the main

inquiry presented by the record. No question is made in respect of the taxing of transfers of no par shares.

The corner stone of the argument of the appellants is *People ex rel. Farrington* v. *Mensching (supra)*. That case, as we have said, dealt with the Stock Transfer Tax Act of 1906, which imposed a tax of two cents " on each *share* of one hundred dollars of face value or fraction thereof," instead of " on each hundred dollars of *face value* or fraction thereof," as provided by the act of 1905. The ruling of the *Mensching* case was that the act of 1906 was void as an arbitrary discrimination prohibited by the Fourteenth Amendment of the Constitution of the United States. It will be recalled that the act of 1905 had previously been sustained in *People ex rel. Hatch* v. *Reardon (supra)*. The point of departure in the *Mensching* case was stated by the opinion in these sentences:

" The act of 1905 * * * made no discrimination between the shares of different corporations founded on the accident of the amount for which they were issued, but taxed on the basis of a uniform amount of face value as the standard. The tax was measured by one hundred dollars of face value, ascertained by counting the shares, if issued for exactly that amount; by dividing each share into multiples of one hundred dollars, if issued for more, and by adding the face values and dividing the result into multiples of that sum, if issued for less.

" The act [of 1906] now before us does not classify by arranging according to quality, but by arranging according to accident. * * * Thus it imposes the same tax on the sale of dollar shares and hundred dollar shares. The tax is measured by the number of shares, regardless of face value or actual value. * * *

" While it is true that the face value, which in multiples of one hundred dollars we held in the *Hatch* case to be a proper basis of classification, does not necessarily indicate actual value, still it bears some relation thereto, but a share apart from its size or face value can bear no relation whatever to its actual value " (pp. 17, 21).

By the act of 1933 ·the basis of the tax on transfers of par stock is again " the number of shares, regardless of face value or actual value "— the rule condemned in the *Mensching* case. On that short ground the appellants say that case decides this. We think that case cannot now be regarded as controlling authority here.

The *Mensching* case was decided in 1907. Our statute sanctioning the issuance of no par shares — the first of its kind — was enacted in 1912. The Legislature thereby adopted the view that face value as a symbol of the real worth of shares in a corporation was a conception that had been rebutted by experience. That change in policy and the consequent alteration of the corporate structure brought in its train problems of taxation which spread beyond the field of the newly authorized shares.

On March 24, 1933, the Governor sent to the Legislature a message in which it was noticed that, following the enactment of section 270-a of the Tax Law, the kind and face value of many stocks had been so changed as materially to reduce the amount of transfer taxes. That message said:

" As recently as in the year 1930 there were only 28 changes in the character of the stocks listed on the two New York exchanges. Though only 33 in the year 1931, the number last year suddenly advanced to 104. And this year has already shown more than 65 changes, either actually made or in process. In large measure these changes have been from no-par stock and par stock of high par value to par value stock of low face value, in many instances as low a $1.00 per share and in one instance as low as ten cents per share.

" In the case of a change from a no-par stock to a par value stock of $1.00 per share, for example, the state revenue is thereby reduced to just one-hundredth. Multiplication of such cases seriously endangers the tax revenue at a time when the State needs every cent. For instance, in the year 1931, the total of such losses on the

two exchanges was only $30,000. But last year they rose to about $634,000. The progressive accumulation of these losses, together with those which will result from contemplated changes, will severely impair the estimated revenues from this source."

The act of 1933 was the response to this message. It cannot be denied that the necessity of preventing such evasion was an important factor in the legislative question (*Hatch Case*, 184 N. Y. at p. 447.)

In the face of these circumstances, this court must accept the judgment of the Legislature in rejecting the device of taxing transfers of par stock on the basis of par value and in determining to treat par and no par shares alike for the purposes of this tax.

We return, therefore, to the broad question whether a tax on transfers of par stock may validly leave out of account the actual value of the shares, and here, we think, the answer is clear in the light of the final and controlling judgment in the *Hatch* case which had not been delivered when the *Mensching* case was decided. In affirming the *Hatch* case, the Supreme Court of the United States said (204 U. S. 152, 159, 160): " Yet another ground on which the owners of stock are said to be deprived of their property without due process of law is the adoption of the face value of the shares as the basis of the tax. One of the stocks was worth thirty dollars and seventy-five cents a share of the face value of one hundred dollars, the other one hundred and seventy-two dollars. The inequality of the tax, so far as actual values are concerned, is manifest. But, here again equality in this sense has to yield to practical considerations and usage. There must be a fixed and indisputable mode of ascertaining a stamp tax. In another sense, moreover, there is equality. When the taxes on two sales are equal the same number of shares is sold in each case; that is to say, the same privilege is used to the same extent. Valuation is not the only thing to be considered. As was pointed out by the Court of

Appeals, the familiar stamp tax of two cents on checks, irrespective of amount, the poll tax of a fixed sum, irrespective of income or earning capacity, and many others, illustrate the necessity and practice of sometimes substituting count for weight."

These views, it is now argued, were in part *obiter* — that " count " there meant the counting of units of one hundred dollars of face value, and that it did not mean counting the number of shares involved in the transfer. We do not so interpret the opinion of the highest court of the nation. Taking the content of that opinion in what appears to us to be its plain significance, we are constrained to pass over the reasons suggested in favor of another course, and to hold that the act of 1933 is not unconstitutional because it taxes transfers of par stock without regard for the true value of the shares. (Cf. the opinion of this court in the *Hatch Case,* 184 N. Y. at p. 446.) It may be added that recent decisions have sustained other privilege taxes levied on no par shares at a flat rate per share or on the basis of assigned value (*New York* v. *Latrobe,* 279 U. S. 421; *International Shoe Co.* v. *Shartel,* 279 U. S. 429; *People ex rel. Griffith* v. *Loughman,* 249 N. Y. 369), a result wholly consistent with the quoted views of the Supreme Court in the *Hatch* case and scarcely to be reconciled with the principle of the decision in the *Mensching* case.

The appellants also make the point that it is an irrational division which fixes a higher rate for one of the two sales price levels at which the tax is laid. We think the rate is reasonably adjusted to the value of the privilege and to ability to pay. (See *Magoun* v. *Illinois Trust & Sav. Bank,* 170 U. S. 283; *Clark* v. *Titusville,* 184 U. S. 329. Cf. *Louisville Gas & Elec. Co.* v. *Coleman,* 277 U. S. 32.)

The judgment should be affirmed, with costs.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, CROUCH and FINCH, JJ., concur.

Judgment affirmed.