CROWN ZELLERBACH CORP. v. ANGLIM.

No. 28140.

United States District Court
N. D. California, S. D.

Dec. 29, 1952.

Ellis N. Slack, Acting Asst. Atty. Gen. and Andrew D. Sharpe and F. A. Michels, Sp. Assts. to Atty. Gen., Chauncey Tramutolo, U. S. Atty. and Macklin Fleming, Asst. U. S. Atty., San Francisco, Cal., for defendant.

GOODMAN, District Judge.

Plaintiff seeks recovery of $22,082.08, the documentary stamp tax levied, pursuant to section 1802(a) of the Internal Revenue Code, Title 26 U.S.C., upon an issue of its stock. The facts have been stipulated. The sole question of law is whether or not the stock issue upon which the tax was levied was an "original issue" subject to the tax imposed by section 1802(a).

The term "original issue" is not statutorily defined. Section 1802(a) states simply that a tax shall be levied on "each original issue, whether on organization or reorganization, of shares or certificates of stock," by any corporation. The Bureau of Internal Revenue originally interpreted this language to mean that a tax should be levied on each new class of stock issued by a corporation. Pursuant to this interpretation, the tax was imposed upon shares issued to effect a stock split-up, or an exchange of one type of stock for another even though corporate capital was not augmented by the issue. The courts rejected this interpretation as contrary to the congressional intent to tax only "original" issues of corporate stock. It has been held that new classes of stock representing previously dedicated capital do not constitute "original" issues subject to the tax imposed by Section 1802(a). New shares or certificates issued merely to effect a stock split-up,[1] or to convert outstanding common into preferred or preferred into common,[2] or par to no-par,[3] are not "original" issues so long as the issue does not increase corporate capital. An issue to be "original" must represent newly dedicated capital.

T. W. Dahlquist, C. L. Barnard and Orrick, Dahlquist, Neff & Herrington, San Francisco, Cal., for plaintiff.

1. Standard Mfg. Co. v. Heiner, D.C.W.D. Pa.1924, 300 F. 252; American Laundry Machinery Co. v. Dean, D.C.S.D.Ohio 1923, 292 F. 620; Trumbull Steel Co. v. Routzahn, D.C.N.D.Ohio 1923, 292 F. 1009.

2. Edwards v. Wabash Ry., 2 Cir., 1920, 264 F. 610.

3. Cleveland Provision Co. v. Weiss, D.C. N.D.Ohio 1925, 4 F.2d 408; In re Grant-Lees Gear Co., D.C.N.D.Ohio 1924, 1 F. 2d 393.

The stock upon which the tax in dispute was levied was issued in connection with the merger in April, 1937 of plaintiff and Crown Willamette Paper Company. Pursuant to the plan of merger, plaintiff, as the continuing corporation, issued new preferred and common stock in exchange for its own outstanding stock as well as that of Crown Willamette. The present controversy concerns only the tax levied on a portion of the new stock exchanged for plaintiff's own outstanding stock.

At the time of the merger, plaintiff had outstanding, exclusive of treasury shares:

| | | | | |
|---|---|---|---|---|
| Preferred stock (Series A) | 190,720 shares | stated value | $80.46 | $15,346,042.37 |
| Preferred stock (Series B) | 59,870 shares | stated value | $90.00 | 5,388,300.00 |
| | 250,590 shares | | | $20,734,342.37 |
| Common Stock | 1,868,109 shares | par value | $5.00 | 9,340,545.00 |

In exchange for each share of its old common stock having a par value of $5, plaintiff issued one share of its new common stock having a par value of $5. Since no change in capital liability resulted, defendant concedes that no tax is due on the common stock issued to effect this exchange.

In exchange for each share of its old preferred stock, both Series A and B, plaintiff issued one share of its new common stock and one and one-fortieth shares of its new preferred stock. The new preferred had a stated value of $100 per share. Thus, for each share of the old preferred stock, new common and new preferred stock was issued having a combined book value of $107.50. The book value of the new preferred and common stock exchanged for each share of the old preferred therefore exceeded the book value of each share of the old Series A Preferred by $27.04 and the book value of each share of the old Series B Preferred by $17.50. The total book value of all of the new preferred and common stock issued in exchange for all of the old preferred stock exceeded the book value of the old preferred by $6,204,082.63.

Upon the issuance of this stock in 1937, plaintiff immediately paid a tax of $6,204.10 on $6,204,082.63 worth of the stock, which represented the excess in book value of the new stock over the old preferred. In 1941, defendant levied and collected from plaintiff a tax of $22,082.08 on the remainder of the new stock issued in exchange for the old preferred. Plaintiff now contends that the entire new issue exchanged for the old preferred was an original issue exempt from the stamp tax. But, the statute of limitations concededly bars recovery of the tax paid in 1937 on that portion of the new stock which exceeded the old preferred in book value. In this action, plaintiff seeks to recover only the tax paid on the portion of the new stock which equaled the old preferred in book value.

Defendant concedes that so much of the new common and preferred stock as did not exceed the book value of the old preferred did not represent newly dedicated capital. But he contends that the additional new stock given in exchange for the old preferred did represent new capital. Because the new capital cannot be attributed to specific shares of the new stock, defendant concludes that each share of the new stock represents in part new capital. Since Section 1802(a) does not specifically authorize the imposition of the tax on part of a share or certificate, defendant insists that the entire new issue of stock must be taxed as an original issue.

Plaintiff contends that the entire issue of new stock exchanged for its old preferred stock represents old capital. If this be true there is no doubt but that the entire issue is tax exempt. Defendant insists that the issue represented new capital to the extent that the value of the new stock exceeded the book value of the old, that is, to the extent of $6,204,082.63 Plaintiff has sought to demonstrate that this $6,204,082.63 can be attributed to former capital rededicated as capital.

■ Plaintiff accounted for the $6,204,-082.63 increase in its capital liability by transferring to its Capital Stock Account $6,204,082.63 from an account denominated "Surplus Clearing Account." This Surplus Clearing Account was a temporary one established to account for certain of the transactions made to effect the merger of plaintiff and Crown Willamette. Upon the merger, plaintiff transferred to this account $2,443,613.40 which was Crown Willamette's earned surplus, $5,001,117.14 which was plaintiff's earned surplus, and $9,032,590.23 which was the balance in plaintiff's Capital Surplus Account. This sum of $9,032,590.23 which was transferred from the Capital Surplus Account to the Surplus Clearing Account, was, of course, more than sufficient to offset the $6,204,082.63 transferred from the "Surplus Clearing Account" to the Capital Account.

The $9,032,590.23 balance in plaintiff's Capital Surplus Account, at the time of the merger, may be traced back to April 30, 1932 at which time there was no balance in the account. On that date the value of plaintiff's outstanding common stock was reduced by $13,612,238, and that amount was transferred from the Capital Stock Account to the Capital Surplus Account. This capital had, of course, been taxed at the time that the common stock had originally been issued. The Capital Surplus Account was then debited by $6,149,191.24 to reflect a reduction in the book value of certain assets and the creation of a reserve for receivables. This left a balance in the Capital Surplus Account on April 30, 1932 of $7,463,046.76 which represented the reduction in value of plaintiff's common stock and hence represented previously dedicated capital. Thereafter, up to the time of the merger, the balance in the Capital Surplus Account fluctuated upwards and downwards as debits and credits were made to

reflect adjustments of the book value of assets and changes in the reserve for receivables. But, at no time during this period did the balance in the Capital Surplus Account fall below the $7,463,046.76 balance which existed on April 30, 1932. Thus it may be said that the $7,463,046.76 in that account which represented the reduction in value of plaintiff's common stock, remained intact up to the time of the merger. This amount was in excess of the $6,204,082.63 transferred from the Capital Surplus Account through the "Surplus Clearing Account" to the Capital Stock Account to offset the increase in value of the new preferred and common stock over the old preferred stock.

Since there was thus restored to capital an amount which had previously been dedicated to capital sufficient to offset the increase in value of the new stock over the old stock, it seems logical that the new stock issue in its entirety represented previously dedicated capital. If this be so, the issue was not original, and not taxable. Indeed, the logic of this reasoning was later recognized in a regulation of the Bureau of Internal Revenue.[4]

Defendant's contra argument appears to be to the effect that the amount allegedly rededicated to capital is not clearly identifiable because the $7,463,046.76 in plaintiff's Capital Surplus Account which represented previously dedicated capital was momentarily commingled, so-to-speak, in the "Surplus Clearing Account" with the earned surplus of plaintiff and Crown Willamette. There is no merit in this argument. Plaintiff's accounts were not so many barrels filled with silver dollars, which, if lumped together, would be hopelessly commingled. It is clear that when plaintiff increased its capital liability it had available an amount of previously dedicated capital sufficient to

4. A tax is not payable with respect to stock issued in a recapitalization unless the recapitalization results in the rededication of an amount as capital which amount is so dedicated for the first time. Thus, where a corporation transferred an amount from capital to capital surplus in a prior recapitalization, and such corporation in a subsequent or second recapitalization transfers such amount from capital surplus to capital under such circumstances that the amount so restored to capital is clearly identifiable, a tax is not payable with respect to the amount so rededicated as capital.

Treasury Regulations 71, Sec. 113–23 (e), 26 C.F.R. § 113.23, 13 F.R. 2407, promulgated in 1946.

do so. The fact that plaintiff temporarily accounted for the previously dedicated capital by including it in a total figure, which also included earned surplus, did not change its nature.

Since the stock issued in exchange for plaintiff's old preferred stock was in its entirety supported by previously dedicated capital, no part of it is taxable as an original issue.

■ While it is sufficient to rest judgment in favor of plaintiff upon this ground, it is not inappropriate to point out that there is another basis for decision. The tax here was imposed upon the theory that a stock issue, which even *in part* represented *new* capital, must be taxed in its *entirety*.

Plaintiff's contention that this theory cannot be legally approved, must be sustained. Recent well considered decisions so hold.[5] In my opinion, the tax collector's theory rests upon form and not upon substance. Defendant has ignored the congressional purpose in preference for a mechanical application of inconclusive statutory language. Inequity and inconsistency in the administration of the statute have resulted. Substantially similar stock issues have been given greatly different tax treatment. To illustrate, if plaintiff had issued new shares of preferred stock of the same stated value as the old shares, and had distributed them to the old shareholders with the admonition that part of them represented the old shares and part the new capital, defendant would have considered only part of the issue taxable. Yet the essential nature of the issue would have been unchanged. Plaintiff should not be penalized taxwise for assigning its new preferred stock a more convenient stated value.

■ The only just and reasonable interpretation of the statute is that a stock issue, which represents readily determinable amounts of both old and new capital, is taxable only to the extent that it represents new capital. This conclusion is strengthened by the fact that, in 1947, Section 1802(a) was amended to make this clear.[6] A proviso was added specifically stating that where certificates or shares are issued in a recapitalization, "the tax payable shall be that proportion of the tax computed on such certificates or shares issued in the recapitalization that the amount dedicated as capital for the first time by the recapitalization, whether by a transfer of earned surplus or otherwise, bears to the total par value (or actual value if no par stock) of such certificates or shares issued in the recapitalization." Since this amendment was not made retroactive it does not govern the tax on plaintiff's stock issue.

■ Defendant contends that the fact that Section 1802(a) was amended indicates that without the amendment it carried the meaning which he has assigned to it. In support of this conclusion, defendant calls attention to a statement in the Committee Reports on the amendment,[7] that "at present, in some cases, the tax imposed under section 1802 on capital stock issues, once levied, must be reimposed upon part of a new capital stock issue." Probably this statement meant nothing more than that the Committees were aware that the Bureau of Internal Revenue had been insisting that the statute required the reimposition of the tax on the same capital. But, whatever the import of the statement, the opinion of the Committees as to the meaning of the original statute is not controlling. It is the intent of the Congress which enacted the statute that governs.

Of the three decisions[8] cited by defendant, Rio Grande does not in fact support the

5. Crown Cork & Seal Co., Inc. v. United States, 94 F.Supp. 117, 118 Ct.Cl. 156; Westinghouse Electric Corp. v. United States, D.C.W.D.Pa.1951, 96 F.Supp. 961.

6. Act of August 8, 1947, 61 Stat. 921.

7. Senate Report 713, House Report 969, 80th Congress, First Session, U.S.Congressional Code Service (1947) at page 1683.

8. Rio Grande Oil Co. v. Welch, 9 Cir., 1939, 101 F.2d 454; Southern Pacific Co. v. Berliner, 9 Cir., 1949, 176 F.2d 671, affirming D.C.N.D.Cal.1948, 78 F.Supp. 696; American Gas & Electric Co. v. United States, D.C.S.D.N.Y.1946, 69 F. Supp. 614.

doctrine, urged by defendant.[9] Southern Pac. v. Berliner did not decide this question although the District Court, whose decision was appealed, did. American Gas did decide the question favorably to the cause of defendant.

But be that as it may, Crown Cork & Seal Co., Inc. v. United States and Westinghouse Electric Corp. v. United States, footnote 5, the more recent cases, appear to me to be better reasoned.

Judgment for plaintiff upon findings to be presented pursuant to the Rules.

9. That case like the present one concerned an exchange of old shares for new ones of greater value. But the decision, rather than supporting respondent, reveals an instance in which the Bureau of Internal Revenue did not follow the practice it now contends the statute requires. Although the opinion is somewhat hazy on the point, the record in that case shows that the Bureau made no attempt to levy a tax on that portion of the new issue which equaled the value of the old shares. The question in that case was whether or not the remainder of the new issue represented new capital.