120 So.2d 603 (1959)
NORTH AMERICAN COMPANY, a Florida Corporation, Appellant,
v.
Ray E. GREEN, Comptroller of the State of Florida, Appellee.
Supreme Court of Florida.
December 2, 1959.
On Rehearing May 11, 1960.
*604 Saunders, Curtis, Ginestra & Gore and George H. Gore, Fort Lauderdale, for appellant.
Richard W. Ervin, Atty. Gen., Fred M. Burns and Robert J. Kelly, Asst. Attys. Gen., for appellee.
THORNAL, Justice.
Appellant North American Company which was plaintiff below seeks reversal of a declaratory decree finding it liable for the payment of certain documentary stamp taxes.
Several questions, including the constitutionality of Section 201.05, Florida Statutes, F.S.A., are presented for consideration. The determining point, however, is whether the hereinafter described corporate stock transaction constituted a transfer of a right to receive stock thereby producing a liability for the documentary stamp tax imposed by Section 201.04, Florida Statutes, F.S.A.
Appellant North American Company, a Florida corporation, was the wholly owned subsidiary of R.H. Gore Company, an Illinois corporation. The former will hereinafter be referred to as "North American" and the latter as "Gore". Although authorized by charter to issue 1,000 shares of no par value stock, appellant North American had issued to Gore 104 shares which constituted all of its outstanding stock. As consideration for the stock, Gore had transferred to North American real estate of the value of $689,065.22. At all times mentioned herein this was considered to be the value of the common stock of North American that had been issued to Gore. *605 During 1954 the stockholders and directors of Gore decided to reorganize its operation for reasons not here material. Thereafter the stockholders and directors of North American approved a plan of reorganization which was proposed by Gore. The plan simply was that North American would amend its charter so as to obtain authority to issue a total of 104,000 shares of no par value stock. The plan provided that Gore, the parent company, would surrender for cancellation its 104 shares of the original stock of North American and thereupon in turn North American would issue and deliver direct to the stockholders of Gore the 104,000 shares of North American in proportion to the stock ownership of the Gore stockholders. In accord with the plan, Gore endorsed its two certificates evidencing the 104 shares of North American stock in the following words, to wit: "Surrendered for reissue to stockholders of the R.H. Gore Co." Reduced to its simplest terms, the transaction merely was that Gore surrendered to North American all of the outstanding capital stock of the latter with instructions to North American to reissue its total authorized capital stock to the stockholders of Gore in proportion to their stock ownership in the latter.
The appellee Green, as Comptroller, contended that the transaction was a transfer of a right to receive the 104,000 shares of North American stock and therefore taxable at the rate of 10 cents per share under Section 201.04, Florida Statutes, F.S.A. In the alternative Green claimed that the transaction resulted in an original issue of 104,000 shares of North American stock and therefore was taxable as such under Section 201.05, Florida Statutes, F.S.A. In either case the amount of the tax would be the same. In order to have its rights and liabilities, if any, determined, appellant North American filed its complaint for a declaratory decree. It asked the Chancellor to construe the two statutes and in the ultimate to find that the transaction did not constitute a transfer of anything more than 104 shares of no par stock and therefore taxable at the rate of 10 cents per share under Section 201.04, Florida Statutes, F.S.A. The total tax on the transaction in the view of appellant was $10.40. Appellant also asked the Chancellor to declare that the issuance of 104,000 shares was not an "original issue" under Section 201.05, Florida Statutes, F.S.A. It alleged, however, that if this should be considered an "original issue" of no par stock having an actual value of less than $100 per share, as it did, then the applicable provisions of Section 201.05, Florida Statutes, F.S.A., should be declared unconstitutional as a denial of equal protection of the law. This was grounded on the fact that the statute taxed no par stock on the basis of value if its actual value exceeded $100 per share but did not recognize the actual value element if it was worth less than $100 per share.
The Chancellor had the view that Section 201.05, Florida Statutes, F.S.A., did not offend the Constitution; that the issue of 104,000 shares by North American constituted an "original issue" under said Section 201.05, supra, and that appellant would be liable for the payment of the tax upon an original issue at the rate of 10 cents per share or a total of $10,400. The Chancellor had the further view that even if the transaction should not be considered an "original issue", it nevertheless constituted a transfer of a right to receive 104,000 shares of no par stock and was taxable at the rate of 10 cents per share under Section 201.04, Florida Statutes, F.S.A. in which event the tax would likewise amount to $10,400. In either event the result would be the same. The appellant seeks reversal of this decree.
It is the contention of the appellant that the issuance of the 104,000 shares by North American could not constitute an "original issue" for the simple reason that no new capital was introduced into the operation of the corporation. It contends that at most the 104,000 shares constituted merely a reissue of stock in lieu of the 104 shares surrendered by Gore. It contends that the *606 stockholders of Gore received no increased benefits from the transaction because the reissued shares of North American were divided among the stockholders proportionately. Appellant further contends that at most the transaction was merely a transfer of 104 shares of non par stock in North American with a resulting tax of $10.40 under Section 201.04, Florida Statutes, F.S.A.
The appellee contends here, as he did before the Chancellor, that the issuance of the 104,000 shares by North American was an original issue and taxable as such under Section 201.05, Florida Statutes, F.S.A., which section he asserts is constitutional. In the alternative, appellee contends that if the transaction did not constitute an original issue then it was a transfer of a right to receive 104,000 shares of no par stock taxable under Section 201.04, Florida Statutes, F.S.A. In either event the amount of the tax would be the same. The appellee specifically disclaims any effort to collect the tax on an original issue under Section 201.05, and also to collect the tax on the transfer under Section 201.04, Florida Statutes, F.S.A. We are therefore not confronted with this problem.
In view of the conclusion which we hereafter announce, we find it unnecessary to explore the matter of the alleged unconstitutionality of certain provisions of Section 201.05, Florida Statutes, F.S.A. It is a long established rule that the courts will not consider the alleged unconstitutionality of a statute unless it is necessary to do so in order to dispose of the problem at hand. In the instant matter we find it unnecessary. As pointed out hereafter we have the view that the transaction described in the forepart of this opinion is taxable as a transfer of a right to receive 104,000 shares of nonpar stock under Section 201.04, Florida Statutes, F.S.A. We do not consider that the issuance of the 104,000 shares by North American was an "original issue" within the contemplation of Section 201.05, Florida Statutes, F.S.A.
The pertinent provisions of Section 201.04, Florida Statutes, F.S.A., are as follows:
"On all sales, agreements to sell, or memoranda of sales or deliveries of, transfers of legal title to shares, or certificates of stock or profits or interest in property or accumulations in any corporation, or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale, whether entitling the holder in any manner to the benefit of such stock interests rights or not, on each one hundred dollars of face value or fraction thereof the tax shall be ten cents; and where such shares are without par or face value, the tax shall be ten cents on the transfer or sale or agreement to sell on each share; * * *." (Emphasis added.)
The pertinent provisions of Section 201.05, Florida Statutes, F.S.A., are as follows:
"On each original issue, whether organization or reorganization, of certificates of stock issued in the state, or profits, or of interest in property or accumulations, by any corporation, on each one hundred dollars of face value, or fraction thereof, the tax shall be ten cents; provided, that where a certificate is issued without face value, the tax shall be ten cents per share, unless the actual value is in excess of one hundred dollars per share, in which case the tax shall be ten cents on each one hundred dollars of actual value or fraction thereof. * * *" (Emphasis added.)
The appellant asserts that if the transaction could be construed as involving an "original issue" under Section 201.05, Florida Statutes, F.S.A., then that portion of the section imposing the tax of 10 cents per share on non par stock unless the actual *607 value is in excess of $100 per share in which case the tax shall be 10 cents on each $100 of actual value or fraction thereof is unconstitutional and discriminatory against the issuance of non par stock having an actual value of less than $100 per share. We have stated that we pretermit any discussion of the contended unconstitutionality of the statute because we have the view that the issuance of the 104,000 shares by North American did not constitute an "original issue" under the cited statute.
The rule seems to be reasonably well established that where there is no essential change in the amount of capital with which the corporation does business or in the rights of a stockholder except to the extent that each stockholder might have an increased number of shares, although no more valuable than before the issuance of such increased number of shares, the issuance of the added shares does not constitute an "original issue" taxable under the documentary stamp tax laws. We have the view that there can be no "original issue" of stock by an existing corporation unless there is an actual increase in the capital structure. In other words, to constitute an original issue the stock must represent newly dedicated capital. Where new shares are issued merely to effect a stock split-up as distinguished for example from a stock dividend, no taxable original issue comes into being. American Laundry Machinery Co. v. Dean, D.C.Ohio, 292 F. 620; West Virginia Pulp & Paper Co. v. Bowers, D.C.N.Y., 293 F. 144; United States v. Pure Oil Co., 7 Cir., 135 F.2d 578; Crown Zellerbach Corp. v. Anglim, D.C.Cal., 109 F. Supp. 514; Crown Cork & Seal Co. v. United States, 94 F. Supp. 117, 118 Ct.Cl. 156.
Illustrative of the rule by contrast, the issuance of additional stock would be considered an original issue and, therefore, taxable when added capital is introduced into the capital structure as, for example, where funds are transferred from surplus to capital and a stock dividend is declared. W.T. Grant Co. v. Duggan, 2 Cir., 94 F.2d 859; United States v. California Electric Power Co., 9 Cir., 187 F.2d 313; Westinghouse Electric Corp. v. United States, D.C.Pa., 96 F. Supp. 961. There was no taxable "original issue" here.
We proceed now to what appears to us to be the determining aspect of the matter. The appellee contends and the Chancellor ruled that regardless of whether the issuance of the 104,000 shares by North American constitued an "original issue", nevertheless, the transaction did amount to a transfer of a right to receive shares of no par value stock which would be taxable as such at 10 cents per share under Section 201.04, Florida Statutes, F.S.A.
Appellant insists that the only thing it transferred was 104 shares of non par stock and that the most it should be required to pay is $10.40 or 10 cents per share as required by Section 201.04, Florida Statutes, F.S.A. The appellant does not contend that Section 201.04, Florida Statutes, F.S.A., violates the Constitution. In other words, appellant admits that for purposes of collecting the documentary stamp tax a state may distinguish between stock having a par or face value and stock having no face value or non par stock. It is not contended that there is any constitutional impediment to providing for the collection of the tax on the transfer of par value stock on the basis of its face value and at the same time providing for the collection of a tax on the transfer of non par stock on the basis of a fixed rate per share regardless of value. In arguing its position with reference to Section 201.05, Florida Statutes, F.S.A., dealing with original issues, appellant did contend that the state could not constitutionally discriminate in collecting the tax on no par stock by fixing the rate at a stated amount per share if the actual value did not exceed $100 and then base the tax on the actual value of the non par stock if such actual value exceeded $100. This contention, however, is not applicable to Section 201.04, Florida Statutes, F.S.A., governing the tax on transfers for *608 the reason that in this section no effort was made to tax non par stock on any other basis than the fixed rate per share. Under Section 201.04, supra, all no par value stock is treated the same regardless of actual value.
We come now to determine whether the transaction above described constituted a transfer of a right "to receive" shares of stock which would be taxable at 10 cents per share under Section 201.04, Florida Statutes, F.S.A. If Gore merely transferred 104 shares of the stock of appellant, the tax would be a nominal amount. On the other hand, if Gore transferred the right to receive 104,000 shares of the stock of appellant the tax would obviously be substantial. Although appellant argues in its brief that the transaction did not constitute a transfer of a right to receive the reissued shares, we do not find that it has cited any direct precedents or authority to support its position. Appellant does urge that the transaction did not result in any increase in the aggregate value of the stock of North American Company. In other words, it asserts that the 104,000 shares were worth no more than the 104 shares surrendered by Gore for a reissuance in the form of the new shares. While this may be true, it should be recalled that we are here dealing with non par stock which is not taxed on the basis of its par or face value because it has none. It is not taxed under Section 201.04, supra, on the basis of its actual value. Such stock under the statute is taxed on a "per share" basis. The result of this is that when such stock is transferred, the actual value thereof is totally immaterial. The tax is imposed on the transferring transaction on the basis of a fixed rate per share. It will be recalled that the appellant does not question the constitutionality of this type of taxation.
In support of its position that the 104,000 shares issued by North American did not constitute an original issue, appellant refers us to Shreveport-El Dorado Pipe Line Co. v. McGrawl, 5 Cir., 63 F.2d 202. It then suggests that the same decision supports its position to the effect that the transaction above described did not constitute a transfer, by Gore, of a right to receive the additional North American shares.
In the last cited decision the Court of Appeals, Fifth Circuit, adhered to the established rule that taxing statutes should not be extended by implication beyond their clear import and that any doubt regarding the meaning of words in such statutes should be resolved in favor of the taxpayer. In that case a Louisiana corporation was created for the purpose of exchanging all of its capital stock for the entire assets and properties of a Delaware corporation. Pursuant to the reorganization plan the Delaware corporation directed the Louisiana corporation to issue its stock to the stockholders of the Delaware corporation in proportion to their stock ownership in that corporation. The court appeared to take the view that there was no transfer in the sense of a change of ownership of the Delaware corporation stock. They held that the stockholders of the Delaware corporation had the same stock interest and the same property interest after the transaction as they had before. This appears to be the strongest decision in favor of appellant's position here. Our own research, however, reveals that some years later in Jefferson Lake Sulphur Co. v. United States, 5 Cir., 195 F.2d 1012, the same court for all practical purposes receded from its position in the Shreveport-El Dorado Pipe Line case and announced its adherence to a contrary rule. In the Jefferson Lake Sulphur Co. case a New Jersey corporation was created to take over the assets and assume the liabilities of a Louisiana corporation. The stock of the New Jersey corporation was issued and delivered direct to the stockholders of the Louisiana corporation. In other words, the Louisiana corporation transferred its assets to the New Jersey corporation which in turn issued its capital stock to the stockholders of the Louisiana corporation. The Circuit Court of *609 Appeals for the Fifth Circuit in this later case held that this transaction was the equivalent of a transfer by the Louisiana corporation to its stockholders of its right to receive the stock of the New Jersey corporation. The analogy to the case at bar, we think, is clear. Here Gore transferred certain assets to North American. Pursuant to mutually interdependent resolutions the effect of the transaction was that North American in exchange for the assets transferred to it by Gore issued to the stockholders of Gore the stock of North American which otherwise Gore would have been entitled to receive. The transaction, therefore, obviously resulted in Gore's transfer to its stockholders of its right to receive the shares of North American.
In Jefferson Lake Sulphur Co., supra, the Circuit Court of Appeals justified its change of position by reference to Raybestos-Manhattan, Inc. v. United States, 296 U.S. 60, 56 S.Ct. 63, 65, 80 L.Ed. 44. The Raybestos decision was handed down subsequent to Shreveport-El Dorado, supra, and, of course, prior to Jefferson Lake Sulphur Co., supra. In Raybestos, a New Jersey corporation was organized to carry out a plan for the consolidation of three other corporations. Two of the corporations conveyed their property to Raybestos in return for a specified number of shares of its capital stock to be issued directly to the stockholders of the transferring corporations in proportion to their holdings. It was conceded that the documentary stamp tax would be payable only if there was a transfer of a right to receive the stock of Raybestos. It was contended by the transferring corporations that inasmuch as under the agreement neither of the corporations as such was to receive the stock of Raybestos then they could not be considered as transferring any rights to receive the same. The Supreme Court of the United States took the view that while the statute speaks of transfers, it does not necessarily require that the transfer be direct from the hand of the transferror to the hand of the transferree. It is sufficient to subject the transaction to the tax if the right to receive is transferred by any formal procedure to the extent that such right is relinquished by the transferror and thereby vested in the transferree. The relinquishment of the right of ownership or the right to receive by the transferror for the benefit of the transferree and the resultant acquisition of the stock by the transferree brings the taxing statute into operation.
We think the language of Raybestos is equally applicable to the case at bar. There it is stated that "The power to command the disposition of the shares included the right to receive them and the exercise of the power which transferred the right is subject to the tax." In principle we can see no distinction between the situation presented to the court in Raybestos and the situation presented to us in the case at bar. For example, it seems clear by analogy that if Gore had decided to liquidate and had transferred all of its assets to North American in exchange for its common stock to be delivered to the stockholders of Gore then the rule of Raybestos would have been clearly applicable. It seems to us that the rule is no less applicable when the transferring corporation merely transfers a part of its assets which constituted the capital stock in another corporation.
Another decision which we think leads to the conclusion we here reach is Transamerica Corporation v. Lewis, 9 Cir., 126 F.2d 402. There one corporation owned a substantial part of the capital stock of two subsidiary corporations. The parent corporation surrendered the stock in the two subsidiaries with directions to reissue the same to the stockholders of the parent corporation in proportion to their stock holdings. The Circuit Court of Appeals held that this transaction constituted a transfer of the stock of the subsidiaries, that the transfer became complete only when the stock ultimately reached the transferree stockholders and that the tax would be determined on the basis of denominations *610 of the certificates received by each transferree rather than on the basis of the limited number of certificates assigned by the transferror parent corporation. We mention this case to support the view that in order to accomplish a transfer there must, of course, be a transferror, a transferee and an object or right to be transferred. The transaction, however, is not completed until the title to the subject matter of the transfer reaches the transferee. Inasmuch as a transferree is a necessary party to the completion of the transfer then the measure of that which is transferred must be that which is received by the transferree.
We interpolate again that we here deal with non par value stock which is taxable on a per share basis rather than actual value. This leads us again to the conclusion that the tax must be computed on the basis of the shares received by the stockholders of the R.H. Gore Company rather than on the basis of the shares surrendered by Gore for reissuance on a split basis to its stockholders. In actuality under the arrangement reflected by the resolutions of the two corporations when Gore surrendered the two certificates evidencing all of the prior outstanding stock of North American it was surrendering its right to receive the then authorized 104,000 shares. When in turn it directed delivery of the 104,000 shares to the stockholders of Gore, and these shares were actually delivered, the transaction became complete. It then became taxable as a transfer of a right to receive the 104,000 shares of no par value stock.
The sum of our holding simply is that the legal title to the 104,000 shares in North American was received by the stockholders of Gore. The authorization for the transfer of such title was received from Gore. North American was merely the conduit. The legality of the issuance of the stock in North American to the stockholders of Gore rests on the fact that Gore, which as a corporate entity would otherwise have been entitled to receive the stock, granted the right to receive it to its stockholders. This completed a transfer of the 104,000 shares just as effectively as if Gore itself had accepted all of the shares and then made distribution to its own stockholders. Founders General Corporation v. Hoey, 300 U.S. 268, 57 S.Ct. 457, 81 L.Ed. 639.
We are not particularly impressed by the argument of appellant that it might have avoided the transfer tax on 104,000 shares merely by having Gore transfer its 104 shares directly to its own stockholders and then having the stockholders accept distribution of the 104,000 shares direct from North American. Assuming that such negotiation would have avoided the tax, the fact remains that the parties elected to accomplish the transaction in a fashion that subjected them to the tax. We are not privileged to make the taxibility of a transaction dependent upon any consideration of some alternative procedure which might not have been taxable. Founders General Corporation v. Hoey, supra.
We have given considerable weight to the decisions of the various federal courts for the reason that the Florida statute here involved is identical with the federal documentary stamp tax act. 26 U.S.C.A. (I.R.C. 1954) § 4321 et seq. Gay v. Inter-County Tel. & Tel. Co., Fla. 1952, 60 So.2d 22. Although admittedly not directly analogous, we think the conclusion which we here reach is supported by our opinion in the case last cited. In that decision incidentally we relied on several of the same decisions mentioned herein.
We have not overlooked the contention of the appellant that the appellee Green is estopped to collect the subject tax because of his earlier administrative decision to rely on an opinion of the Attorney General to the effect that the tax was not collectible. The instances are rare indeed when the doctrine of equitable estoppel can effectively be applied against state action. It will be invoked only under very exceptional circumstances. We have been referred *611 to no decisions that would lead us to the conclusion that it should be applied in the instant case.
Our research, independently of the briefs of the parties, has led us to a number of analogous decisions which we think without exception support the conclusion which we here reach. United States v. Vortex Cup Co., 7 Cir., 84 F.2d 925; American Gas Machine Co. v. Willcuts, 8 Cir., 87 F.2d 924; Emporium Capwell Co. v. Anglim, 9 Cir., 140 F.2d 224, certiorari denied 322 U.S. 752, 64 S.Ct. 1263, 88 L.Ed. 1582; Standard Oil Co. of California v. United States, 9 Cir., 90 F.2d 571, certiorari denied 302 U.S. 741, 58 S.Ct. 143, 82 L.Ed. 573; American Processing & Sales Co. v. Campbell, 7 Cir., 164 F.2d 918; United States v. Revere Copper & Brass, Inc., 2 Cir., 100 F.2d 391; Ladner v. Pennroad Corporation, 3 Cir., 97 F.2d 10, 118 A.L.R. 1289; Maloney v. Portland Associates, 9 Cir., 109 F.2d 124; American Mail Line v. United States, 1951, 101 F. Supp. 364, 121 Ct.Cl. 63.
We are compelled to conclude that the Chancellor was correct in holding that the transaction constituted a transfer of a right to receive 104,000 shares in appellant North American, that the transfer was taxable at the rate of 10 cents per share and that, therefore, appellant would be liable for the payment of a tax in the amount of $10,400.
Appellee agreed before the Chancellor that he had no objection to crediting the amount of the tax now due with the amount paid by North American on the original issuance of its 104 shares. Although this probably would not follow as a matter of law, since it is injected by agreement we will not disturb the stipulation.
As we have done in a related cause on the subject of jurisdiction, we deem it appropriate to mention that the resolution of the difficult jurisdictional problem involved herein has occasioned more than ordinary delay in the disposition of this matter. See P.C. Lissenden Co., Inc. v. Board of County Commissioners of Palm Beach County, Fla., 116 So.2d 632, opinion filed this date. In accord with the last cited opinion, we have exercised jurisdiction to dispose of this matter on the merits even though we found it unnecessary to pass on the correctness of the final decree regarding the validity of Sec. 201.05, Florida Statutes, F.S.A., which was the vehicle by which the cause was brought to us under Section 4, Article V, Florida Constitution, F.S.A.
The decree of the Chancellor is 
Affirmed.
TERRELL, ROBERTS, DREW and O'CONNELL, JJ., concur.
THOMAS, C.J., and HOBSON, J., dissent.
THOMAS, Chief Justice (dissenting).
The character of the transaction out of which this litigation grew is described in the majority opinion and there is no disposition on the part of this writer to dispute the comment in this respect or to elaborate on the facts as they are there set forth. The concern which prompts this dissent deals with the basic factor of jurisdiction.
The chancellor, in his summary decree, recited that the plaintiff had charged that Sec. 201.05, Florida Statutes 1955, F.S.A., was unconstitutional then concluded that "[n]o constitutional infirmity in the statute [was] made to appear."
An appeal followed and the plaintiff has now become appellant. Evidently the appellant was prompted by the provision of Sec. 4(2) of Art. V of the Constitution that an appeal as a matter of right may be taken directly from a trial court to the Supreme Court from a judgment "passing directly upon the validity of a state statute"  in this case Sec. 201.05, supra. The question of constitutionality of the law is treated rather obliquely by the appellant in its brief filed here and even more indirectly by the appellee. See International Hod Carriers' Building and Common Laborers' Union *612 Local 478  AFL-CIO v. Heftler Construction Company, Fla., 112 So.2d 848.
The cause of this dissent springs from the manner of dealing with the litigation after it came to this court on the wings of a ruling specifically stamping the act a valid one.
I simply cannot agree that because the organic law vouchsafes to a litigant the right to appeal and that right arises from a decision such as the chancellor made in the instant case, the act of appealing settles beyond doubt the matter of jurisdiction, for it is always the province of this court to decide finally upon the exercise of its own power. The right to appeal and the power to determine complement each other, to be sure, but the former does not control the latter.
As we agreed in Evans v. Carroll, Fla., 104 So.2d 375, 378, the determining factor in passing upon the power to retain and decide an appeal is the substantiality of the question involved. And I am unable to comprehend how this court can say in one breath, in one case, Evans v. Carroll, supra, that when constitutional questions are "colorable" and "unrelated to the particular facts involved," they present no substantial basis upon which an appeal will lie, and transfer of the cause will result, and in the next breath, and the next case, this one, say that decision of the constitutional question answered by the trial court is completely beside the point yet the court will retain the case and adjudicate the remainder of the litigation, instead of sending it to the District Court of Appeal.
A very similar situation is discussed in the dissenting opinion in P.C. Lissenden Co., Inc. v. Board of County Commissioners of Palm Beach County, Florida, now under consideration by this court and there is no need to elaborate on the point except to observe that it is the opinion of the writer that this court should say whether the chancellor was right or wrong in upholding the act. If this question is considered, discussed and decided then the court, its jurisdiction having attached, should decide the whole controversy; if the question of the constitutionality of the act is rejected, the basis of jurisdiction is dissipated and the cause should be transferred to the District Court of Appeal. That is precisely where the appeal would have been lodged had the adjudication, now said in the majority opinion to be useless, never been made.
At this place another rule is introduced, namely, that a court will not pass upon the constitutionality of an act unless it is necessary to a disposition of the case at hand. With that rule as a guide, the court in the majority opinion proceeds to disregard the question of constitutionality of the statute, which was the only one vesting jurisdiction here, and then to decide the other question which without the constitutional matter could not have been heard. I cannot agree that the rule with reference to avoidance of a determination of the constitutionality of an act when the controversy can be decided without it is at all relevant or can, therefore, work to preserve jurisdiction in the court after the constitutional question has been discarded.
The principle was adopted before the amendment of Article V of the Constitution in November 1956. Before that time a case such as this would have come here with or without the direct ruling on the constitutionality of a statute so that if a decision of this question was rejected, the jurisdiction to dispose of the remaining questions would not have been disturbed. Now the situation is quite different because in the absence of a substantial constitutional question of the kind defined in Sec. 4, Art. V, jurisdiction of this court cannot attach and under Sec. 5(3), Art. V, the jurisdiction to entertain and determine the related matters is as exclusively placed in the District Court of Appeal as the power to decide the constitutional question is fixed in this court.
Perhaps the majority opinion in respect of determination of the cause without deciding the validity of the challenged law is correct. It is my view that if such is *613 the situation, the vehicle that brought the case here is eliminated and naught remains for our consideration. In such circumstances I think the rest of the questions should be sent to the District Court of Appeal. To repeat, that is exactly where the case would have gone had the constitutionality of the law not been adjudicated in the trial court. And I cannot reason that the irrelevant question could not only vest jurisdiction in this court but divest the District Court of Appeal of power given that court by the constitution.
I think that when this court says that the constitutional question so lacks relevancy that it should be disregarded, the power of this court to go further ceases and that an attempt to do so constitutes usurpation of the power of the District Court of Appeal.
It is my conviction that this court should entertain the question of validity of Sec. 201.05, supra, if it is thought the question is properly presented, and answer it, or deciding that it is not properly presented or that an answer is not necessary to a decision of the controversy, that the cause should be transferred to the District Court of Appeal for disposition.
HOBSON, J., concurs.

On Petition for Rehearing
THORNAL, Justice.
On petition of appellant we granted rehearing and have heard further oral argument.
In view of appellant's petition for rehearing we now consider the constitutionality of Section 201.04, Florida Statutes, F.S.A.
In our original consideration of the case we drew the conclusion that appellant had not assaulted the constitutionality of Section 201.04, supra. We were correct in concluding that appellant conceded that for purposes of collecting the documentary stamp tax a state may distinguish between stock having a par or face value and nonpar stock having no face value. By its reply brief, appellant admitted "that the State of Florida can constitutionally differentiate between par value stock and no par value stock."
The point made on rehearing however, is that we overlooked a contention of the appellant to the effect that the taxation of a transfer of non-par stock under Section 201.04, supra, at the flat rate of 10¢ per share regardless of actual value, is discriminatory, arbitrary and irrational. Appellant contends that a flat sum tax per share regardless of value offends Section I, Article IX, Florida Constitution, F.S.A., which requires a "uniform and equal rate of taxation." It is also contended that such a tax offends the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States.
We have upon rehearing carefully scrutinized the first brief of appellant. We are willing to concede that upon such detailed inspection the point made on rehearing was probably implicit in the contentions originally submitted. Our original examination of the briefs led us to the conclusion that the argument submitted by appellant regarding the flat sum tax on no par stock transfers under Section 201.04, was offered in order to reveal the alleged unconstitutionality of Section 201.05, which provided a sliding scale actual value measurement for taxing the issuance of no par stock. Be this as it may, and in absolute fairness to appellant we are willing to concede that the constitutionality of Section 201.04, was questioned and argued in the original briefs. Since we did not dispose of this point in our original opinion we proceed to do so now.
Before discussing the merits of the point under consideration we interpolate that our original concern over possible lack of jurisdiction has now been dispelled. By our original opinion we announced that even though we found that Section 201.05, Florida Statutes, F.S.A., was not involved, nevertheless we would proceed to dispose of the entire case on its merits inasmuch as *614 the Chancellor specifically passed on the validity of Section 201.05, supra. However, since we have now concluded that the validity of Section 201.04, Florida Statutes, was also involved and necessarily considered by the Chancellor in the entry of the final decree it becomes apparent that our jurisdiction to dispose of the entire matter rests upon the firm foundation implicit in the consideration and determination of the constitutionality of both sections of the statute.
Returning to the merits, it will be recalled that appellant North American contends that Section 201.04, Florida Statutes, F.S.A., which imposes a flat sum documentary stamp tax upon the transfer of shares of no par stock regardless of value results in an inequality that is discriminatory, and a denial of due process. This is so asserts appellant, for the reason that a 10¢ stamp must be affixed to a share of no par stock whether the actual value of the stock is $10 or $100. North American contends that under such circumstances the amount of the tax when related to actual value is so disproportionate that it becomes obviously unreasonable, irrational and discriminatory.
We cannot concur in the position taken by the appellant. In the first place this contention ignores the basic nature of the type of tax under consideration. If we were involved with an ad valorem property tax, then there might be some merit to appellant's contention in view of Article IX, Section 1, Florida Constitution. However, we here deal with an excise privilege tax which need not be measured by value and which is not burdened with requirements of uniformity and equality constitutionally imposed upon ad valorem taxes. The documentary stamp tax is collected on the privilege of issuing or, in this instant, of transferring certain documents through the channels of business and commerce within the State. It is the exercise of the privilege, not the value of the paper that is being taxed. The tax involved in the instant case is in the nature of a license or privilege tax authorized by Article IX, Section 5, Florida Constitution. The value of the property involved is not important as the basis for the measurement of the tax. It has been constitutionally held that uniformity and equality are not essential ingredients of an excise privilege tax. The ordinary occupational license tax is illustrative. For example, two merchants in a particular category will pay the same license tax even though one might have an inventory worth twenty-five thousand dollars and the other four times as much. The tax is on the privilege of doing business, not on the amount or value of capital invested in the business. Gray v. Central Florida Lumber Co., 104 Fla. 446, 140 So. 320, 141 So. 604; Louis K. Liggett Co. v. Amos, 104 Fla. 609, 621, 141 So. 153; People of State of New York v. Latrobe, 279 U.S. 421, 49 S.Ct. 377, 73 L.Ed. 776, 65 A.L.R. 1341; International Shoe Co. v. Shartel, 279 U.S. 429, 49 S.Ct. 380, 73 L.Ed. 781.
With this concept of the nature of the tax involved we now proceed to ascertain whether a fixed sum documentary stamp tax assessed on the transfer of each share of no par stock regardless of value results in such discrimination as to be offensive to the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States.
Interestingly enough, few decided cases have involved this point. Appellant places its primary, if not its entire reliance upon People ex. rel. Farrington v. Mensching, 187 N.Y. 8, 79 N.E. 884, 10 L.R.A.,N.S., 625. There the New York Court of Appeals held unconstitutional a tax of 2¢ "on each share of $100 of face value or fraction thereof." Laws 1906, c. 414. The prior New York statute imposed a tax of 2¢ "on each $100 of face value or fraction thereof." Laws 1905, c. 241, § 315. The assault on the later statute was grounded on the proposition that the tax was levied on "each share" rather than on the basis of "face value" regardless of the number of shares. Appellant North American in relying on Mensching concedes that for purposes of our present discussion it is immaterial whether we have for consideration *615 par value or no par value stock. The crux of the contention simply is that the tax at a fixed rate per share produces an unconstitutional discrimination because it ignores value. If the Mensching decision were still the law, North American would have strong support for its current position. Unfortunately for this appellant however, the Mensching decision has for all practical purposes, been overruled by the Court of Appeals of New York. The rule of that decision has been held to be no longer available or controlling in a situation comparable to the one at bar.
In Vaughan v. State of New York, 272 N.Y. 102, 5 N.E.2d 53, 54, 108 A.L.R. 950, the New York Court squarely held that a tax on the transfer of par value stock may validly be based entirely upon the number of shares transferred. It was there held that the Legislature may constitutionally omit any element which takes into account the actual value of the shares. In the Vaughan case a 1933 Amendment to the New York documentary stamp tax act (Tax Law, McKinney's Consol.Laws. c. 60, §§ 270, 270-a) which imposed the transfer tax at a fixed rate per share regardless of value, was upheld against the contention that it was discriminatory. In Vaughan the statute involved imposed a tax of a stated rate per share on all sales or transfers of stock where the shares were sold for an amount less than $20 and a higher fixed sum rate per share when the shares were sold for more than $20 per share. The tax was imposed on the transfer of each share regardless of actual value. As pointed out above, the New York Court of Appeals recognized that it was dealing with a tax on "the number of shares, regardless of face value or actual value" which was the rule condemned in the Mensching case. In Vaughan the New York Court announced that the Mensching decision could no longer "be regarded as controlling authority." The sum of all of this simply is that the Mensching case upon which appellant North American depends was specifically and clearly receded from by the New York Court when it announced its decision in the Vaughan case in 1936.
The Vaughan conclusion is consistent with the views expressed in the only other decisions which we have found on the subject. The Court of Claims in Clay Products, Inc. v. United States, 52 F.2d 1033, 72 Ct.Cl. 670, held that the Federal documentary stamp tax levied at the rate of 2¢ per share on the issuance of no par value stock was constitutional. The statute fixing the tax was upheld against an assault on its constitutionality in which the taxpayer contended that the tax was confiscatory in that it was levied at a fixed rate per share without regard to the actual value of the stock. Clay Products, Inc. v. United States, supra, has been cited with approval by the Supreme Court of Florida in Gray v. Central Florida Lumber Co., supra, and Louis K. Liggott Co. v. Amos, supra. So far as we have been able to determine the rule of the Clay Products decision has never been disturbed.
In addition to Vaughan v. State of New York, supra, and Clay Products, Inc., v. United States, supra, the position which we here take is clearly supported by the decisions of the Supreme Court of the United States in People ex rel. Hatch v. Reardon, 184 N.Y. 431, 77 N.E. 970, 8 L.R.A.,N.S., 314; 204 U.S. 152, 27 S.Ct. 188, 51 L.Ed. 415; People of State of New York v. Latrobe, supra; International Shoe Co. v. Shartel, supra; and by the Court of Appeals of New York in People ex rel. D.W. Griffith, Inc. v. Loughman, 249 N.Y. 369, 164 N.E. 253.
Finding as we do that Section 201.04, Florida Statutes, F.S.A., is not subject to the assault levelled against it, we now adhere to our original opinion herein except to the extent that it is necessarily modified by this opinion.
It is so ordered.
THOMAS, C.J., and TERRELL, HOBSON, ROBERTS, DREW and O'CONNELL, JJ., concur.